# BILLINGS *v.* ILLINOIS.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 106. Argued December 4, 1902.—Decided January 19, 1903.

The claim that section 2 of the act providing for the taxation of life estates, as construed by the highest courts of the State of Illinois, is in contravention of the Fourteenth Amendment in that the classification of life tenants is arbitrary and unreasonable and denies to life tenants the equal protection of laws because it taxes one class of life estates where the remainder is to lineals and expressly exempts life estates where the remainder is to collaterals or to strangers in blood, cannot be sustained.

Inheritance tax laws are based upon the power of a State over testate and intestate dispositions of property, to limit and create estates, and to impose conditions upon their transfer or devolution. This court has already decided in regard to this law that such power could be exercised by distinguishing between the lineal and collateral relatives of a testator,

Whether the amount of the tax depends upon him who immediately receives, or upon him who ultimately receives, makes no difference with the power of the State. No discrimination being exercised in the creation of the class, equality is observed. *Magoun* v. *Illinois Trust and Savings Bank*, 170 U. S. 283, followed.

THE case is stated in the opinion of the court.

*Mr. James F. Meagher*, with whom *Mr. William D. Guthrie* was on the brief, for the plaintiff in error, contended that this case differed and should be distinguished from, *Magoun* v. *Illinois Trust and Savings Bank*, 170 U. S. 283, as that case did not decide that tenants for life or for years could be discriminated against in the manner provided in section 2 of the act, now before the court. The point could not have been considered in that case for the plain reason that Mrs. Magoun was not a tenant for life or for years, and could not have been heard to complain of discrimination in a class to which she did not belong. The whole class of life tenants or tenants for years could have been exempted, and such a classification would be within the discretion of the legislature. The constitutionality of the exemption under section 2 is now directly challenged by the plaintiffs in error because they belong to the class affected, and they contend that in their class they are discriminated against in that the tax is not similarly imposed upon others within the same class receiving substantially the same kind of property or exercising the same privilege.

Submitted by *Mr. Howland J. Hamlin*, Attorney General of the State of Illinois, for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The case presents the question of the constitutionality, under the Fourteenth Amendment of the Constitution of the United States, of section 2 of the inheritance tax law of the State of Illinois. Rev. Stat. Illinois, 1895, c. 120, par. 308. The constitutionality of the law was passed upon in *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, and is there set out. As much of section 2 as is necessary to quote is as follows :

"Sec. 2. When any person shall bequeath or devise any property or interest therein or income therefrom to mother, father, husband, wife, brother and sister, the widow of the son, or a lineal descendant during the life or for a term of years or (and) remainder to the collateral heir of the decedent, or to the stranger in blood or to the body politic or corporate at their decease, or on the expiration of such term, the said life estate or estates for a term of years shall not be subject to any tax and the property so passing shall be appraised immediately after the death at what was the fair market value thereof at the time of the death of the decedent in the manner hereinafter provided, and after deducting therefrom the value of said life estate, or term of years, the tax transcribed by this act on the remainder shall be immediately due and payable to the treasurer of the proper county, and, together with the interests thereon, shall be and remain a lien on said property until the same is paid ;   . . ."

It is claimed, however, that the question presented in this case was not passed upon in *Magoun* v. *Illinois Trust & Savings Bank.* If this be not so, if this case cannot be distinguished from that, it follows necessarily that the judgment sought to be reviewed must be affirmed.

The proceedings originated in the County Court of Cook County, Illinois, which entered a judgment order assessing taxes, under the law in controversy, upon the property and estates passing to the plaintiffs in error. The order was affirmed by the Supreme Court of the State. 189 Illinois, 472.

Albert M. Billings, a resident of Chicago, died in that city, February 7, 1897. He left surviving him a widow, Augusta S. Billings; a son, Cornelius K. G. Billings, one of the plaintiffs in error, and grandson, Albert M. Billings Ruddock, who is the other plaintiff in error. He also left a son by a former marriage, with whom this record is not concerned. His estate was very large, and he devised and bequeathed it all to his wife, excepting certain reservations, during her natural life. How it should be divided, then, the will proceeded to provide as follows:

"I do also herein give and bequeath to my son Cornelius

Kingsley Garrison Billings, and to my grandson Albert M. Billings Ruddock, to be held and owned by them at the death of my wife Augusta S. Billings as is hereinafter explained and set forth, all the property and estate herein bequeathed to her my wife not otherwise disposed of by my said executors hereinafter named, in the manner following to wit: Two thirds thereof to my son C. K. G. Billings and one third thereof to my grandson Albert M. Billings Ruddock to be held and owned by them as above stated during their lifetime, and should my son C. K. G. Billings die, not leaving a living child or children of his own issue, the property herein bequeathed to him shall revert and be held and owned by my grandchild Albert M. Billings Ruddock during his lifetime, and should my grandson Albert M. Billings Ruddock die not leaving a child or children of his own issue, then all the property and estate herein bequeathed to him shall revert and become the property and estate of my brother John D. Billings (should he be alive at that time) and my living nephews and nieces who shall be living at the time of the death of my said grandson, as aforesaid, said brother, nieces and nephews to share and share alike in said estate."

The will, therefore, created a life estate in the widow in the entire estate, and at her death life estates of two thirds and one third of the property bequeathed respectively to the testator's son and grandson, the plaintiffs in error.

The widow renounced the provision made for her, and elected to take in lieu thereof her dower and legal share, and the estates to the plaintiffs in error accrued at once. The County Court appointed an appraiser to fix the fair market value of the estates for the purpose of assessing the inheritance tax as provided by the statute. "The widow's dower award," to quote from the opinion of the Supreme Court, "and one third of the personalty were appraised at the total sum of $2,363,151.75, the tax upon which, after deducting the $20,000 exemption, was fixed at $23,443.53. The life interest (as it was decreed to be) of said Cornelius in the two thirds bequeathed to him was appraised at $2,472,118.75, and after deducting his exemption of $20,000, the tax to be paid by him was assessed at

$24,821.18. This included the specific devise of real estate valued at $30,000. The life interest of Albert M. Billings Ruddock in the one third interest bequeathed to him was appraised at $1,408,374.77, and after deducting his exemption of $20,000, his tax was assessed at $14,043.74. This included also the tax on a specific devise to him of real estate valued at $16,000. The court, in approving the appraiser's report, found that Cornelius K. G. Billings took a life estate in the two thirds of the residuary estate bequeathed to him, and that there was a remainder therein of the value, at the testator's death, of $864,584.70, which had not vested, and that there was a remainder in the one third bequeathed to Albert M. Billings Ruddock for life of the value of $250,976.95, which had not vested, and ordered that the tax on these remainders be postponed until they shall have become vested."

The widow was an appellant in the Supreme Court of the State, but she is not a party here.

The assignment of error is " that the statute is in contravention of the Fourteenth Amendment to the Constitution of the United States of America, in that the classification of life tenants is arbitrary and unreasonable, and denies to the plaintiffs in error, as life tenants, the equal protection of the laws ; because the statute, as interpreted and enforced by the state courts, taxes life estates where the remainder is to lineals, but does not tax, and expressly exempts, similar life estates where the remainder is to collaterals or to strangers in blood."

Turning to the *Magoun* case, we find that the objection made to the statute was that it denied to the appellant the equal protection of the laws, and the somewhat elementary and lengthy discussion in the opinion was induced by the grounds upon which, and the ability with which, the statute was attacked. It is very certain that no consideration was omitted from the arguments at bar which could have aided the court to form a judgment. If there had been a proper classification there could not have been the denial of the equal protection of the laws, and we, therefore, expressed and illustrated the principle upon which it should be based. We said it was established by cases that classification must be based on some reasonable ground.

It could not be a "mere arbitrary selection." But what is the test of an arbitrary selection? It is difficult to exhibit it precisely in a general rule. Classification is essentially the same in law as it is in other departments of knowledge or practice. It is the grouping of things in speculation or practice, because they "agree with one another in certain particulars and differ from other things in those same particulars." Things may have very diverse qualities, and yet be united in a class. They may have very similar qualities, and yet be cast in different classes. Cattle and horses may be considered in a class for some purposes. Their differences are certainly pronounced. Salt and sugar may be associated in a grocer's stock for a grocer's purposes. To confound them in use would be very disappointing. Human beings are essentially alike, yet some individuals may have attributes or relations not possessed by others, which may constitute them a class. But their classification—indeed, all classification—must primarily depend upon purpose—the problem presented. Science will have one purpose, business another and legislation still another. The latter, of course, on account of the restraints upon the legislature, may not be legal—may not be within the power of the legislature. To dispute that power, however, is not the same thing as to dispute a classification, and yet that there may be dependence—more freedom of classification in some instances—has been indicated by the cases. A State cannot regulate interstate commerce, however accurate its classification of objects may be. On the other hand, the taxing power of a State is one of its most extensive powers. It cannot be exercised upon persons grouped according to their complexions. It can be exercised if they are grouped according to their occupations. A State may regulate or suppress combinations to restrict the sale of products. The power cannot be exerted to forbid combinations among those who buy products and permit combinations among those who raise or grow products. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540. And yet, exercising its taxing power, it has been decided, that a State may make that discrimination. *American Sugar Refining Co.* v. *Louisiana*, 179 U. S. 89. Other illustrations may be taken from the cases which tend to the same end. If the

purpose is within the legal powers of the legislature, and the classification made has relation to that purpose, (excludes no persons or objects that are affected by the purpose, includes all that are,) logically speaking, it will be appropriate; legally speaking, a law based upon it will have equality of operation. And, excluding our right to consider policies or assume legislation, we have many times said that a State in its purposes and in the execution of them, must be allowed a wide range of discretion, and that this court will not make itself "a harbor in which can be found a refuge from ill-advised, unequal and oppressive legislation." *Mobile Co.* v. *Kimball,* 102 U. S. 691.

These principles were announced in the *Magoun* case and found to sustain the Illinois statute. We said: "There are three main classes in the Illinois statute, the first and second being based, respectively, on lineal and collateral relationship to the testator or intestate, and the third being composed of strangers to his blood and distant relatives. The latter is again divided into four subclasses dependent upon the amount of the estate received. The first two classes, therefore, depend on substantial differences, differences which may distinguish them from each other and them or either of them from the other class— differences, therefore, which 'bear a just and proper relation to the attempted classification'—the rule expressed in the *Gulf, Colorado & Santa Fé Railway Co.* v. *Ellis,* 165 U. S. 150. And if the constituents of each class are affected alike, the rule of equality prescribed by the cases is satisfied. In other words, the law operates 'equally and uniformly upon all persons in similar circumstances.'"

But it is insisted that the classification sustained in the *Magoun* case "related solely to the graduated feature of the tax." In the case at bar, it is said, the question is "whether or not the Illinois legislature can discriminate against *constituents of a certain class,* and apply different rules for the taxation of its members. Life tenants constitute but a single class, and the incidents of such an estate, the source thereof, the extent, the dominion over and quality of interest in the tenant, is the same irrespective of the ultimate vesting of the remainder. The tax

is not upon the property, but is upon the person succeeding to the property."

Undoubtedly, life tenants regarded simply as persons, may be in legal contemplation the same; estates for life regarded simply as estates with their attributes also in legal contemplation, may be said to be the same, but that is not all that is to be considered, nor is it determinative. We must regard the power of the State over testate and intestate dispositions of property, its power to create and limit estates, and, as resulting, its power to impose conditions upon their transfer or devolution. It is upon this power that inheritance tax laws are based, and we said, in the *Magoun* case, that the power could be exercised by distinguishing between the lineal and collateral relatives of a testator. There the amount of tax depended upon him who immediately received; here the existence of the tax depends upon him who ultimately receives. That can make no difference with the power of the State. No discrimination being exercised in the creation of the class, equality is observed. Crossing the lines of the classes created by the statute discriminations may be exhibited, but within the classes there is equality.

*Judgment affirmed.*