THE STATE at the Relation and to the Use of SALINE COUNTY v. WILLIAM N. WILSON and EQUITABLE SURETY COMPANY, Appellants.

Division One, June 6, 1921.

1. REFERENCE: Exceptions to Report: Extension of Time: Waiver. The extension of the time for filing exceptions to a referee's report is a matter of discretion in the trial court, as is also a consideration of them if filed without leave after the statutory period for filing them has expired; and failure to object to exceptions filed out of time is a waiver of the untimely filing. [Following McPike v. McPike, 111 Mo. 1. c. 222, and Clarke v. Kane, 37 Mo. App. 1. c. 263.]

2. APPEAL: Review of Referee's Findings: Action at Law. In an action at law, the findings of the referee will on appeal be reviewed only to the extent of determining whether there is substantial evidence to support them, and to support the trial court's approval or modification of them. And an action by the county for the recovery of money obtained by the superintendent of its county farm from the sale of corn, mules and cattle, which he in his answer admits he did obtain, but therein avers he paid it out, under authority of law and by direction of the county court, for things which were properly chargeable to the county, as shown specifically by an itemized exhibit attached, being the averment of a counterclaim, is an action at law.

3. ———: ———: Act of 1919: Invalid: Unreasonable Classification. The Act of 1919 (Laws 1919, p. 213; Sec. 1444, R. S. 1919) declaring that "on appeals in all cases, whether law or equity, in which a referee has been appointed and made a report, the appellate court shall, on exceptions properly preserved, review the evidence and the findings of fact and conclusions of law of the referee and trial court, and give such judgment as shall be conformable to the law on the evidence," is invalid, in so far as it relates to actions at law. It divides a natural class, namely, actions at law, into two subdivisions, and requires the law to be administered in the appellate court in one way for one subdivision and in a different way for the other; it requires the appellate court to try *de novo* all actions at law in which a referee has been appointed, but leaves in force the ancient rule applicable to all actions at law that, on appeal, the findings of the jury, or of the judge sitting as a jury, will be reviewed on appeal only so far as to determine whether they are supported by substantial evidence. Such a classification is arbitrary, unreasonable and violative of constitutional inhibitions, and it also offends the due-process-of-law provisions of the Constitution.

4. **BOND: Liability of Surety.** A surety company which executed the bond as surety and each year thereafter received and accepted the premium for its renewal, with the knowledge and consent of all the parties interested, is liable if its principal is.

5. **SUPERINTENDENT OF COUNTY FARM: No Books or Reports: Contingent Fund.** Where the statute required the superintendent of the county farm to keep a book of account, and to present it to the county court on the first day of every regular session, and to turn over to the county treasurer all amounts coming into his hands from any source "except by warrants drawn in his favor by the county court," and no such account book was kept, but the county court instead required him to make out and file on the first of each month a monthly report, and the items of account for which he says he expended the money received from the sale of corn, cattle and mules were not included in these reports, he and his surety are liable for the amount of money thus obtained. Nor is there any law authorizing him to build up a contingent fund to be used in paying current expenses, unless the county court by warrant advances expense money on the first of each month or quarter.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis,* Judge.

State ex rel. Saline County v. Wilson.

AFFIRMED.

*Harvey & Bellamy* for appellant.

(1)   The Superintendent of the County Poor Farm had authority to sell the farm products and other articles of produce raised on said farm and also the livestock belonging thereto, and had authority also to purchase articles for the use of the poor, or for the use or improvement of the farm, or the buildings thereon, and to expend moneys for farm labor and other work for services dones by his order or contact.  R. S. 1919, sec. 12212. By virtue of this authority, he sold said produce and live stock and paid out the moneys arising from the sale thereof, or retained the same as such sales were made for the items set out in his counterclaim, or set-off, which were for work done or materials furnished for said farm, and which were for things necessary, and useful for said farm and for the inmates of said poor-house, and were for labor, food, freight on articles, disinfectant and other things actually consumed on said farm.  All these expenditures are set out in detail in said defendant's counterclaim, and the evidence in the case shows that each item of this account was paid by Wilson and also for what purpose.   (2)   The defendant Wilson had a right in this suit (a) to have an accounting with the county court and (b) to be credited with the items of this counterclaim.   (a) The plaintiff sues to recover of said Wilson moneys alleged to be due by him to the county from the sale of live stock and produce and avers in the petition "that although said defendant received said money as such Superintendent, yet he has failed and refused to account for the same or any portion therefor, or pay the same over to said county or to the treasurer of said county, but has appropriated the same to his own use." Plaintiff thus seeks to open the accounts of the defendant, and therefore said Wilson has the right to open his side of the

account also. When one side of an account is opened, the account is opened for both parties to correct any omission or mistakes therein. 1 Corpus Juris, p. 722; Callaway County v. Henderson, 139 Mo. 521. (b) Sec. 12212, R. S. 1909, contemplates that, subject to his duty to make reports to the county court, the superintendent of the poor farm has full control of the farm and is made sole manager thereof, and has the right to sell and buy all necessaries for the farm by virtue of his office. No order of the county court is needed to empower him to sell produce or stock or to purchase necessaries. All these transactions, the statute says, are to be "by the superintendent or by his authority." He is the authorized agent of the county by virtue of his appointment and all expenditures made by him or under his authority should be paid by the county, if made in good faith and in the exercise of reasonable judgment. Harkreader v. Vernon County, 216 Mo. 693. The evidence shows that said Wilson retained a sufficient amount of money from the sales of said produce and live stock, for the purpose of covering and reimbursing himself for the amounts expended by him, as shown in detail in his counterclaim. It is true the statute requires that the superintendent keep a book account of all transactions, but the evidence shows that this was not done because of the change made by the county court, itself, but it nowhere appears in the statute that such failure to keep such a book deprives the defendant of his right to reimbursement for moneys which he, in the exercise of his authority, as such superintendent contracted and paid in good faith for supplies furnished and work done for the benefit of the county. Nor does the statute provide that the county may refuse to pay items of expenditure justly made, merely because the same were not presented at some particular term of the court. If these expenditures were made by him, he has the undoubted right to reimbursement, if honestly made, and nothing in the statute precludes, restricts or destroys this right. (3) The finding of the referee is not

borne out by the evidence. In fact the undisputed evidence is to the contrary. The evidence nowhere shows that the county had furnished the defendant any money with which to pay the items set out in his counterclaim. Each and every item of the counterclaim is due and should be paid by the county to said Wilson, and the referee should have so found, and judgment should have been entered by the court in favor of the defendant on his counterclaim, and such counterclaim, being in excess of the claim allowed by the referee, judgment should have been entered for the defendant. (4) The Equitable Surety Company executed the bond sued on at the time of the appointment of defendant Wilson by the county court, as superintendent, in the year 1912, for one year, and it does not cover the periods of time alleged in the petition. The fact that said Wilson paid premiums to said Surety Company during the years 1913, 1914, 1915 and 1916, would seem to us not to extend said Surety Company's liability during said years, nor bind said Surety Company by way of estoppel, as estoppel is not pleaded. There is no proof against said Surety Company sufficient to show legal liability under the bond sued on.

*Albert R. James* for respondent.

(1) No objections or exceptions were filed to the report of the referee within four days after said report was filed and, therefore, this court cannot consider the exceptions made to such report. Sec. 1442, R. S. 1919; Reinecke v. Jod, 56 Mo. 386; Gaston v. Kellogg, 91 Mo. 109; Kansas City v. Forsee, 168 Mo. App. 217; Berry v. Rood, 209 Mo. 673; Maloney v. Mo. Pac. Ry. Co., 122 Mo. 106; Price v. Davis, 187 Mo. App. 10. (2) Defendant Wilson had no authority to dispose of property belonging to the county and appropriate it to any purpose whatever, but the money derived therefrom must be paid into the county treasury for the support of the poor. Sec. 12214, R. S. 1919. (3) Claims against the county

must be filed with and allowed by the county court, and cannot be made as a counterclaim, as is attempted to be done by the defendant in this case. Sec. 9560, R. S. 1919. (4) The defendant Surety Company having executed the bond originally in 1912, and having accepted annually renewal premiums thereon. from defendant Wilson, up to and including the first of March, 1916, is estopped from claiming that said bond was not in full force and effect during the four years, by accepting the annual renewal premiums thereon, and the county court being advised of such fact and that such renewal premium was a renewal of said bond for another year, the defendant, Surety Company, became bound each subsequent year to 1912 just the same as for the first year. Building & Loan Assn. v. Obert, 169 Mo. 507. (5) The finding of fact by the referee will not be disturbed on appeal, if supported by substantial evidence. Bissell v. Warde, 129 Mo. 439; Feeney v. Chapman, 89 Mo. App. 371; Citizens Bank v. Donnell 172 Mo. 384; Citizens Co. v. McDermott, 109 Mo. App. 306; Vogt v. Butler, 105 Mo. 479.

GRAVES, J.—This is an action upon an official bond. March 25, 1912, defendant William N. Wilson, having been recently appointed as superintendent of the County Farm of Saline County, and being required to give a bond for his official conduct, gave the bond here involved, with his co-defendant, Equitable Surety Company, as surety thereon. The condition of the bond reads:

"The condition of the above bond is such that, whereas, the said William N. Wilson was on the 5th day of February, 1912, duly (1) appointed in the office of (2) superintendent of the County Farm of the County of Saline, in the State of Missouri, and has been duly commissioned. Now, therefore, if the said William N. Wilson shall (3) faithfully account for all money belonging to the County of Saline that shall come into his hands and exercise due diligence and care over the property

belonging to the County of Saline under his control, then
this obligation to be void, otherwise to remain in full
force and effect.''

Wilson was re-appointed in the years 1913, 1914, and
1915, and paid the premium for the renewal of this bond
for each of said years. This was done with the knowl-
edge and consent of the County Court of Saline County.
After the conclusion of his fourth year of service, and
after his last monthly settlement with the county court,
it was discovered that Wilson had sold certain property
on the county farm, and had failed to account therefor,
in any of his divers monthly reports, during his four
years service. This suit followed. In the petition it is
charged that Wilson sold from such farm, and failed to
account therefor, the following property, viz.:

| | |
|---|---|
| Dec.—1913, 200 bu. corn for..........| $200.00 |
| May 6,—1914, 2 mules for............. | 370.00 |
| Dec. 1,—1914, 3 heifers, for........... | 100.00 |
| Sept.—1915, 5 heifers and bull for...... | 210.00 |
| Total | $880.00 |

The petition further avers that in March, 1915, Wil-
son reported the sale of the mules at the sum of $155 and
accounted for such sum of $155, and gives credit for such
sum, leaving a charge against Wilson of $645. Judg-
ment was asked for the penal sum of the bond ($2,000),
to be satisfied by the payment of the amount found due
the county.

Each defendant first filed separate answers in the
nature of a general denial. Later the defendant Wilson
filed an amended answer, in which he makes a number of
admissions, and then proceeds thus:

''This defendant, for further answer to the plain-
tiff's petition, states that immediately after his appoint-
ment as above stated, as superintendent of the County
Farm and Poor House of Saline County, Missouri, he
entered upon the discharge of his duties as such; that
as such superintendent it became his duty from time to

time to sell and dispose of various articles of produce and the surplus stock that accumulated on said farm; that in caring for the property belonging to the said Saline County on said farm and the indigent poor persons kept in said farm and in said Poor House, it became necessary and it was his duty from time to time to make expenditures and outlays of said cash items for labor, supplies and other things necessary for the conduct of said farm; that in order to meet said expenses long before the time mentioned in the plaintiff's petition, and at such time as well, he was directed by and it was understood by and between the defendant and the County Court of said Saline County that he should keep on hand to meet such cash contingent items a said small sum of cash out of the proceeds of crops, stock or other produce sold by him off of said farm; that this defendant during all the above time did so withhold and keep in his possession for expenses and expenditures of this nature a total of six hundred and eighty-four ($684) dollars, out of which said amount at the end and close of his administration he turned back to the plaintiff county as surplus in said contingent fund the sum of one hundred and sixty-nine ($169) dollars, leaving a net balance of five hundred and fifteen ($515) dollars placed in his hands by the plaintiff to be expended for the contingent items aforesaid; that the aforesaid sum was the total amount in his hands during the years 1913, 1914 and 1915, being the times alleged in plaintiff's petition that said sums were so withheld by him.

"That this defendant expended out of said fund for the purposes and uses of said farm and in connection with the management, and with the authority conferred upon him by law, and under authority and direction of the County Court of said Saline County, sums amounting to five hundred and seventy-three dollars and eighty-three cents ($573.83); that all of said items and sums so expended were outside of and in addition to those contained and set forth in his regular monthly report of

expenditures made to the County Court of said Saline County, for allowance, and above all other accounts and bills charged or credited to said Saline County, by him, the defendant, and constituted only cash items that were necessary to be paid at the time of the respective transactions upon which said sums were paid, and not the usual subject of credit or charge accounts; this defendant has made out in full a statement and account of all such items so expended by him in his capacity as superintendent of the said County Farm and Poor House, and as agent in this capacity of Saline County, Missouri, during said period; that said statement of account of expenditures so made by him is annexed to this answer and is made a part thereof, being marked 'Exhibit 1,' and setting out item by item cash expenditures so made by him out of said funds.

"That this defendant has fully complied with all of his duties and responsibilities as superintendent of the County Farm and Poor House of Saline County, Missouri, during the term of his employment; that he has fully accounted to and set forth from time to time to the county court all disbursements and expenditures made by him, both in connection with the ordinary charge accounts connected with the management of said institution, as well as in the disbursements and expenditures of the incidental fund entrusted and permitted to his care by the County Court of Saline County. That by an oversight in turning over the surplus in his hands at the termination of his employment as superintendent, this defendant paid and turned into the treasury of Saline County, upon his final statement and settlement, fifty-eight dollars and eighty-three cents ($58.83) in excess of the amount received by him for use and expenditures in the cash or contingent funds entrusted to him by the County Court of Saline County during his said term of employment.

"Wherefore, your defendant, having fully answered the petition of the plaintiff, respectfully asks the court

that an accounting concerning these items alleged to be due to and from the plaintiff and the defendant not heretofore admitted to be settled be had and that the amount and balance due this defendant be determined and adjudged in his favor and against the plaintiff, and that a full statement and settlement of the aforesaid account between Saline County, Missouri, and this defendant as the agent of Saline County, Missouri, and superintendent of its County Farm and Poor House, as above stated, be had and fully determined, and that full justice be rendered to each of the parties in the premises as is made to appear by the evidence, and for such other remedy and relief as to the court may seem proper.''

To this answer was attached a long itemized account, as indicated above. By reply all this new matter in the answer was specifically denied, and the issues in the case thereby closed. The reply then further proceeds:

''The plaintiff for further reply herein states that said defendant, Wilson, was appointed superintendent of said County Poor House and County Farm by the County Court of Saline County, and took charge thereof under said order and acted under the statutes of the State of Missouri, and made and filed his reports to the county court of said county, and that the county court in open session examined same, passed upon same, believing same to be correct and believed that said reports showed all money and property in the hands of said defendants, and that said defendant, having heretofore in open court filed these said reports and the said court having acted upon the same and finally adjourned, the said defendant, Wilson, is estopped from denying the correctness of his said reports, and plaintiff sets up and pleads an estoppel in bar of defendant's answer, and that defendant can not now deny the correctness of his said reports so made to the court.

''Wherefore, plaintiff prays judgment as in its petition asked.''

The court appointed Hon. Robert M. Reynolds as referee in the cause, and after hearing the case, he made his report to the court on March 7, 1918, being at the January term of the court. After certain formal findings this report of the referee makes the following findings of facts:

"That during his said term as superintendent as aforesaid, the said Wilson, as said superintendent, did about the —— day of December, 1913, sell and deliver of the property of Saline County, Missouri, a lot of corn, of about 200 bushels, then in his hands, to one Azo Potter for the sum of $120, and receive the proceeds of sale thereof in said sum in cash; and likewise about the —— day of September, 1915, said defendant Wilson, as superintendent, did sell and deliver of the property of Saline County, Missouri, five heifers, then in his hands, to one Thomas Carpenter, for the sum of $185, and received the proceeds of sale thereof in said sum in cash; and likewise, about the 6th day of May, 1914, the said Wilson, as said superintendent, did sell and deliver of the property of Saline County, Missouri, then in his hands, two mules to one Thomas Conway for the sum of $370, and received the proceeds of sale in said sum in cash therefor; that thereafter he accounted to and paid to plaintiff, the County of·Saline, on account of said mules, the sum of $155 of the purchase price received by him therefor.

"That the remainder of· said purchase price for said mules in the sum of $215, and the proceeds of the calves sold Thomas Carpenter in the sum of $185, and the proceeds of the corn sold to said Azo Potter in the sum of $120, has never been accounted for to the plaintiff, or paid into the county treasury, but remains unaccounted for by defendant Wilson and due the plaintiff by him.

"That the defendant during each and every month of his term or terms of office as said superintendent, from the 25th day of March, 1912, to the 1st day of February, 1916, made full report to the County Court of Saline County, Missouri, of all charges and expenses in-

curred for the use of the County Farm, and of the poor kept thereon, and for the use and improvement of the Poor Farm and buildings thereon, and for farm labor and other work and services done by his order or contract, and of all bills due on account thereof, and of the parties to whom the same was due, to the time of each of said reports, and the said county court, upon examination thereof, caused to be drawn to each and every party to whom said bills or charges were due a warrant therefor, which said warrant was thereupon delivered to said parties, or in lieu thereof would cause its warrant to be drawn in favor of said defendant Wilson for the aggregate sum of all said bills and charges, for which individual warrants were not separately issued, and delivered the same to the said Wilson, with which said defendant Wilson might settle all said bills and charges with the person or persons to whom the same were respectively due, and that the items set out in defendant's counterclaim herein were and are items for which the said county court had so furnished defendant the money with which to pay the same, except the items here now following, to-wit:

"Cash paid for Skilinski cork leg　...　$25.00
"Cash paid for smallpox patient ....　15.00
"Cash paid for help for attendant for
　　sick patient ..　...............　$3.00

"Aggregating the sum of $43, and for which said items in said sum of $43, or any other amounts the plaintiff was never at any time liable.

"That at the expiration of defendant Wilson's said term of office in February, 1916, the plaintiff paid to him all sums that were due him upon any and every account, and that thereafter there remained nothing due him from the plaintiff or its county court, but there remained in his hands due the plaintiff the said sum of $520, the proceeds of the sale of corn to Azo Potter and calves to Thomas Carpenter and mules to Thomas Conway, aforesaid, of which plaintiff had no knowledge.

"That the defendant Wilson was never at any time during his said term or terms of office as said superintendent, from the 25th day of March, 1912, to the 1st day of February, 1916, permitted by the County Court of . Saline County, Missouri, to. sell the property of Saline County, Missouri, or any part thereof, coming into his hands or under his possession or control as said superintendent, and to hold the proceeds thereof as a contingent fund out of which to pay any bills or expenses incurred, and that during said term or terms of office he had no such contingent fund in his hands, and the moneys derived by him from the sale of property as aforesaid were derived from sales of property belonging to the · county in his hands as said superintendent, but which said sales were neither reported to said county court by him nor known of by the court from any other source; nor did said county court know that he had any moneys from such source in his hands.

"Said referee further reports that by reason of the facts so found and stated the defendant Wilson has made breach of the conditions of his said bond, and that the findings should be against the defendants and each of them upon defendants' answer and counterclaims, and in favor of the plaintiff, and that the findings upon the petition should be in favor of the plaintiff and against the defendants and both of them, and that plaintiff should have and recover of defendants upon the bond herein the full penal sum thereof, $2,000, to be satisfied, however, by the sum of $520 and interest thereon, and the costs and expenses of this suit."

No exceptions to the report of the referee were filed until after the lapse of the January term. The record shows the filing of the exceptions to have been on May 13, 1918, at the May term of the court. The record fails to show any extension of time for the filing of such exceptions, as it also fails to show any objections to the filing of them out of time. The record does show the consideration of the exceptions by the circuit

court at the September Term, 1918, and the overruling of the same at that time, and further the approval of the report of the referee, and the entry of judgment in pursuance thereof. This outlines the case.

I.  Respondent suggests that the exceptions to the referee's report were not filed within four days, as required by Section 1442, Revised Statutes 1919, and for that reason there is nothing for review. The strict letter of this statute has been obviated in many ways by the appellate courts.

Referee's Report.

In Clarke v. Kane, 37 Mo. App. l. c. 263, THOMPSON, J., ruled that the party waived the time of filing by not making timely objection to a filing made some fifteen days after the report of the referee was made. In McPike v. McPike, 111 Mo. l. c. 222, GANTT, J., ruled that the filing of the exceptions one day after the date given by the court for the filing of exceptions did not make it compulsory upon the trial court to strike out such exceptions upon motion of the opposing party. He ruled that the extension of time for filing exceptions was a matter of discretion in the trial court, and in effect ruled that, when the trial court in McPike's case overrruled the motion to strike out the exceptions, such court was exercising its discretion in the extension of time for filing. To like effect is State ex rel. v. Woods, 234 Mo. l. c. 23-24.

We are cited to the Reinecke v. Jod, 56 Mo. l. c. 387. This case simply holds that the trial court might have overruled the exceptions, because filed out of time, but this court reviewed the record as if the exceptions had been timely filed. In other words we did not disturb the discretion of the trial court. Gaston v. Kellogg, 91 Mo. l. c. 109, is also cited, but this case cites the Reinecke, case, supra, and goes no further in its ruling. To like effect is Maloney v. Rv. Co., 122 Mo. l. c. 114-115. The matter of the trial court's discretion to extend the time under the statute was not discussed. Berry v.

Rood, 209 Mo. l. c. 673, is a case where no exceptions were filed and hence not in point. The foregoing are all the cases from this court pointed out by learned counsel for respondent. We adhere to the McPike and Woods cases, supra. The trial court was guilty of no ill-founded discretion in hearing the exceptions, and the plaintiff waived the time by failing to challenge the exceptions as being out of time.

II. The appeal was granted in this case on November 6, 1918, and the short transcript filed here February 3, 1919. An agreed continuance delayed the hearing in this court. This is an action at law, and was first heard by a referee. The petition states a pure action at law. The answer, whilst it has a prayer in a somewhat equitable form, in fact and law amounts to a counterclaim. Defendant in effect admits that he got the money sued for, but avers that he paid it out under authority of law, and by direction of the county court for matters which were properly chargeable to the county, and to this end sets out the items of payments which he alleges that he made. Such pleadings do not make an action in equity, although they may have been sufficient for a compulsory reference in a law case. We have gone into these details to determine a matter of practice. We have long ruled that in actions at law, although heard by a referee, this court will only review the evidence to such an extent as will enable us to determine whether or not there is substantial evidence to support the findings of the referee, and of the trial court approving or modifying such findings. [State ex rel. v. People's Ice Co., 246 Mo. l. c. 202; St. Louis to use v. Parker-Washington Co., 271 Mo. l. c. 241, et seq.] Up to the Parker-Washington Co. case, supra, there were some inaccuracies of expressions in some cases, but no attack upon the principle. The first discordant note appears in a short dissent in the Parker-Washington case, supra. However, this

*Review of Referee's Findings.*

slight discordant note in the Parker-Washington case became a roaring sound (with substantial judicial support) in Johnston v. Star Bucket Pump Co., 274 Mo. 414, 1. c. 451. But the storm subsided in Roloson v. Riggs, 274 Mo. 522, 1. c. 528, where the rule in the Parker-Washington case received the full concurrence of four judges. That rule, as succinctly stated in Johnston's Case, 274 Mo. 1. c. 424, is:

"The Parker-Washington Company case simply holds that in a case of compulsory reference, where the issues involved are. issues purely at law, and where the trial court has approved the findings of fact made by the referee, such findings, so approved, will not be disturbed by this court, if there is substantial evidence to support such findings. In other words, that this court, in such case, will not review the evidence to determine its weight, but will only review the evidence to determine the fact as to whether or not there is substantial evidence to support the findings. Such findings in such a case stand here upon the same plane as the verdict of a jury in a law case, or as the findings of a court in a law case where no jury has been called."

From the Roloson case on matters moved smoothly, until 1919, when there was passed an act (Laws 1919, p. 213), now Section 1444, Revised Statutes 1919, which reads:

"On appeal in all cases, whether law or equity, in which a referee has been appointed and made a report, the appellant court shall, on exceptions properly preserved, review the evidence and the findings of fact and conclusions of law of the referee and the trial court, and give such judgment as shall be conformable to the law on the evidence."

In the brief of respondent in this case, it is urged that "the finding of facts by the referee will not be disturbed on appeal, if supported by substantial evidence." This conflicts with this statute, and we are (before considering the merits of the case) brought face to face with

this statute. In other words, shall we follow the long established rule of this court in determining the case, or shall we weigh the evidence, in this a law case, and try the case here *de novo?* The applicability and the force and effect of this statute is forced upon us at the very threshold of the case upon its merits. We shall meet the situation as presented.

It has been ruled in Division Two of this court that this statute has no application to appeals pending at the time the statute became effective. [Christine v. Luyties, 217 S. W. 55; Universal Const. Co. v. City of St. Louis, 223 S. W. 931.] These cases excluded the statute, and applied the rule in the Parker-Washington case, and they had the full concurrence of WALKER, J., who had concurred in result in the Roloson Case, supra, when it was determined by our full court.

The present appeal was pending here long before the Act of 1919 became a law, and we might rule this case upon the two cases from Division Two, but we prefer to meet this statute face to face. We think the statute creates an arbitrary classification of law cases, and thereby does violence to constitutional inhibitions, which we will note later.

The Constitution creates three departments of state government (Art. III) and commits them to separate magistracies, and restricts each of these magistracies from unduly interfering with the duties and prerogatives of the others. This court will not entertain an action to either prohibit or compel either executive or legislative action, and it has been held that the legislative power can not destroy the prerogative of this court in matters of contempt. [State ex inf. v. Shepherd, 177 Mo. 205; State ex rel. v. Bland, 189 Mo. 1. c. 218.] But we purpose no discussion of this general topic, and express no opinion thereon. Those cases already written speak for themselves. Whilst we will not interfere with legislative action, we will take the finished product (the law) and measure it by the yardstick of the Constitution. This we shall do with the Act of 1919.

The Constitution recognizes two classes of cases, [Sec. 1, Art. VI.] In this section the organic law says: "The judicial power of the state, as to matters of *law* and *equity* . . . shall be vested in the Supreme Court" and other named courts. In so doing it but recognized the common law classification of cases. In civil cases in this State the two classes were recognized, under separate practice acts, from the organization of the State up to the adoption of the civil code, and since then we have the recognition of the two classes by the code, but we say that one is heard upon the law side, and the other upon the equity side of the same court. [Johnston v. Pump Co. supra.] And be it further said that whilst we had references in law cases, yet we preserved the same principle throughout. If a law case was tried before a jury, the finding of fact by such jury, if sustained by substantial evidence, was binding upon this court. If the same, or similar case, had been tried before the court, without a jury, the findings of fact by the court, if sustained by substantial evidence, were and are binding upon this court. And in the third method of trying a law case, where compulsory reference is applicable, the laws of the State give the findings of fact made by the referee the status of a special verdict, and these findings when approved by the trial court, and when founded upon substantial evidence, were, and should be, binding upon this court. This was the public policy of this State up to the Act of 1919. This public policy recognized law cases as one class, and equtiy cases as another. In law cases it recognized the principle that whoever found the facts, such findings, if supported by substantial evidence, were binding here. There was no trial *de novo* in law cases. This statute clearly directs a trial *de novo* in law cases "in which a referee has been appointed and made a report," because it says "the appellate court shall . . . review the evidence and the findings of fact and conclusions of law of the referee and the trial

court, and *give* such judgment as shall be conformable to the law on the evidence.''

If this statute does not compel a trial *de novo* in this alleged class of law cases, then we do not know how one could be drawn for such purpose. Bearing in mind that the public policy of this State (as expressed in its statutes and court decisions) has been to make the findings of the trier of facts, in law cases, if supported by substantial evidence, binding here, what reason exists of selecting this special class of. law cases (the class made by the Act of 1919) and making them triable *de novo* here? Heretofore if the trier of the facts were a jury, a judge, or a referee, no trial *de novo* here was permitted in a law case. By this Act of 1919, if a law case chances to be tried by a referee, then it must be tried *de novo* here. On the other hand had this same case been tried by a jury, or by the court, without a jury, there could be no hearing *de novo* in this court. The trial court did not have to refer this case, simply because a long account was involved. In Ice Co. v. Tamm, 138 Mo. l. c. 389, GANTT, J., said:

"It is true, as well held in that case, that the court need not refer a case, even if a long account is to be examined, but it does not follow that an erroneous reference may not be made under the ostensible authority of that statute.''

See also Fitzgerald v. Hayward, 50 Mo. 516. So that this case might have been otherwise tried by this court. This, however, is only to illustrate the arbitrary character of the act of the Legislature in saying, by this Act of 1919, that if the court saw proper to refer a law case, then such law case must be tried *de novo* in this court. The act singles out a portion of a natural and well recognized class without reason or substantial basis. To illustrate further; two plaintiffs have the same character of a law case stated in their petition. In such cases the defendants plead an offset or counterclaim, involving a long account. The trial court says to

plaintiff A, I will refer your case, but, feeling more like work the next morning the court says to plaintiff B, this case will be tried without a reference. Both plaintiffs recover, and both cases reach this court, and under this Act of 1919, in A's case we would have to try the matter *de novo* upon the evidence and law, and in B's case we could not give him such a trial. Is the classification made by this act reasonable? We concede to be true, what WILLIAMS, C., thus said in Bank v. Clark, 252 Mo. l. c. 30:

"A statute is not special or class legislation if it apply to all alike of a given class, provided the classification thus made is not arbitrary or without a reasonable basis."

What is the reasonable basis for the classification made by this act? Why should one law case be tried *de novo* as in equity, and another law case be tried here solely upon errors, with the findings of fact binding here? To go further: Suppose after we tried the instant case *de novo*, we reversed and remanded it, and upon a retrial *nisi*, the trial court declined to refer, and tried the case, and appeal was taken by defendant, as is the case now. To the parties we would have to say we can not hear your case *de novo*, on this appeal, because there was no reference trial and report. Is there, in the language of Judge WILLIAMS, a "reasonable basis" for the classification made in this act?

The rule as to class legislation and as to equal protection of the laws, covered by our Constitution is tersely stated by BLAIR, J. (then a Commissioner of this court), in State ex rel. v. Railroad, 246 Mo. l. c. 514:

"The constitutional prohibitions against class legislation and the denial of equal protection of the laws in no wise deprive the Legislature of all discretion in the matter of defining the classes to which its enactments shall apply, and it is only when the classification attempted is arbitrary, unreasonable and unjust that these constitutional provisions inhibit such legislative action. The

Legislature's broad discretion with respect to the classifying of persons and objects for the purposes of legislation is not at all subject to revision by the courts, however unwisely it may seem to have been exercised in an occasional particular instance. When, however, it clearly and beyond a reasonable doubt appears that the legislative power has been transcended and that a particular act arbitrarily, unjustly and unreasonably marks particular persons or things as the objects of burdensome legislation and exempts therefrom others of the *same natural class* it is necessary to point out that fact and give to the constitutional provisions in question their intended effect. It is settled law that a classification for legislative purposes 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis' (Gulf Railway Company v. Ellis, 165 U. S. 150; Billings v. Illinois, 188 U. S. 97; State v. Loomis, 115 Mo. 1. c. 314; Powell v. Sherwood, 162 Mo. 605; State v. Gregory, 170 Mo. 1. c. 604, 605; State v. Cantwell, 179 Mo. 1. c. 265; State v. Tower, 185 Mo. 1. c. 94; State v. Swagerty, 203 Mo. 1. c. 523; State ex inf. v. Standard Oil Co., 218 Mo. 1. c. 369) and, also, that the distinction observed in marking the boundaries of the class to which the resulting enactment shall apply must be one which 'is not arbitrary, but rests upon some reason of public policy growing out of the condition of the business of such class' (State v. Swagerty, supra, 1. c. 524, 525, and cases cited); it 'must be grounded upon a reason of a public nature' (Brady v. Mattern, 125 Iowa, 1. c. 163; Kane v. Erie Ry. Co., 67 C. C. A. 1. c. 658) and 'must be of such a nature as to mark the objects thus designated as peculiarly requiring exclusive legislation' and 'as will, in some reasonable degree at least, account for or justify the restriction of legislation' (State ex rel. v. Hammer, 42 N. J. L. 440). The soundness of these principles is undenied and logically undeniable and it remains to compare the act in question with the standard they fix."

Had the instant law case been tried by the learned circuit judge who approved the findings of fact made by his referee herein, and had he made the same findings that he approved, under this Act of 1919 there would have been no hearing *de novo* in this court. Now it is said, by this Act of 1919, a referee was appointed and made a finding of facts, which finding was approved and adopted by the court, therefore there must be a hearing *de novo* on the evidence under the law .

Does such a classification meet the demands of the Constitution, as fully discussed by our learned brother? We think not. The classification made by this act is not only without reasonable basis, and therefore makes the act unconstitutional, but in my view it further offends the "due process of law" provisions of our organic law.

This disposes of the law, without discussing the more interesting topic as to whether or not the legislative branch of the government can say to this court, and other constitutional courts, through what particular nose-glasses we shall review each appellate record.

III. The Surety Company has no defense, further than that made by Wilson. It executed this bond, and each year thereafter received and accepted the premium for its renewal, with the knowledge and consent of all parties interested. The full facts are pleaded in the petition, and found by the referee. The Surety Company is liable, if Wilson is liable.

We shall not go into the details of the evidence as to Wilson's defense. By Section 12212 he is required to keep a book account. By Section 12213 he is required to present this book account on the first day of every regular session. By Section 12214 he is required to turn over to the county treasurer all amounts coming into his hands, from any source, "except by warrants drawn in his favor by the county court."

Instead of inspecting this book, which the law required to be kept, and which was not kept, the county court required Wilson to make out and file a monthly

report the first of each month. The items of his counter-claim he says were not included in these monthly reports, nor were the sales of the farm products sued for herein, included, except the mules, and they were falsely report-ed at $155 instead of $370. There is no authority in law for the alleged contingent fund, unless the county court should by warrant advance his expense money on the first of each month or quarter, for the going month or quarter. There are some suggestive things in the testi-mony, but it suffices to say that there was very substan-tial evidence upon which the referee could have and did base his findings of fact, set out in the statement. Un-der those findings the judgment should be, and is af-firmed. All concur.