## OHIO OIL CO. v. CONWAY, Supervisor of Public Accounts.

District Court, E. D. Louisiana. August 6, 1928.

No. 19129.

48

R. L. Benoit, Thigpen, Herold, Lee & Cousin, Pugh, Grimmet & Boatner, Chas. H. Blish, Blanchard, Goldstein & Walker, Tinsley Gilmer, and J. S. Atkinson, all of Shreveport, La., for plaintiff.

Percy Saint, Atty. Gen. of Louisiana, for defendant.

Before FOSTER, Circuit Judge, and DAWKINS and BORAH, District Judges.

On Final Hearing.

FOSTER, Circuit Judge. In this case plaintiff filed a bill seeking interlocutory and final injunctions to prevent the collection of certain taxes, levied under the provisions of Act No. 5 of 1928 of the Louisiana Legislature, on the ground that the taxes imposed by said act are unreasonable, discriminatory, and would deprive it of the equal protection of the laws, in contravention of the Fourteenth Amendment of the Constitution of the United States, and also on the ground that the Legislature exceeded its authority under the Constitution of Louisiana in adopting the said act.

On a former hearing an interlocutory injunction was denied. Ohio Oil Co. v. McFarland (D. C.) 28 F.(2d) 441. On appeal from that decision the Supreme Court reached the conclusion that the questions of fact presented could not be satisfactorily determined from the affidavits presented, and, as there was danger of irreparable injury to the plaintiff, an interlocutory injunction on terms should have been granted, pending a hearing on the merits. Ohio Oil Co. v. Conway, 279 U. S. 813, 49 S. Ct. 256, 73 L. Ed. ——, decided March 5, 1929. The material allegations of the pleadings and the provisions of the law complained of are set out in detail in the opinion above referred to and need not be repeated. Stated as briefly as possible, the case is this:

Section 21 of article 10 of the Constitution of Louisiana of 1921 authorizes the levying of taxes on the natural resources of the state severed from the soil or water, provides that such natural resources may be classified for purposes of taxation, and that such taxes may be predicated upon either the quantity or value of the product, at the time and place where it is severed. Act No. 140 of 1922, adopted to carry into effect the above-quoted article of the Constitution, imposed a tax on oil and gas of 3 per centum of the gross market value of the production thereof. By Act No. 5 of 1928, the act of 1922 was amended, with the intention of imposing severance taxes on natural resources by quantity rather than by value. This last act divides oil into six classes, according to gravity, and taxes it at different rates per barrel, beginning with oil of 28 gravity and below, taxed at 4 cents, and ending with oil above 43 gravity, taxed at 11 cents.

Plaintiff is engaged in producing crude oil solely in certain oil fields in North Louisiana, to wit, the Urania field, in La Salle parish, the Haynesville field, in Claiborne parish, the Pine Island field, in Caddo parish, and the Cotton Valley field, in Webster parish. The oil produced in the Urania field is below 28 in gravity; in the Haynesville field, it runs from 30 to 35.9 gravity; in the Pine Island field, from 30 to 39.9 gravity; and in the Cotton Valley field, from 31 to 52 gravity. In the year 1927 in round numbers 19,000,000 barrels of oil were produced in North Louisiana and 5,000,000 in South Louisiana fields, a total of 23,000,000 barrels. Later statistics are not in evidence. Plaintiff produces about 1,200,000 barrels per annum, say about 6.7 per centum of the total in North Louisiana, and about 5.2 per cent. of the total in the state.

Crude oils vary greatly as to base, having a paraffin, asphalt, or mixed base, and in chemical content and gravity. The term "gravity," as applied to oil, does not mean specific gravity, as the lighter the oil the higher the gravity. The higher gravity oils usually have a paraffin base, and are more valuable for the extraction of gasoline and other burning oils, while the lower gravity oils usually have an asphalt base, and are more valuable for the making of lubricating oils and gas oil, a substance from which gasoline may be extracted by a process known as cracking. However, the value of the lower gravity oils for the making of lubricating oil depends a great deal upon the amount of sulphur contained; the more sulphur the less value. The gravity of oil is easily determined by the use of a hydrometer, marked according to the Baumé or some similar scale. All oil is tested for gravity at the well when delivered to the pipe line companies, and the gravity grade is shown on the run tickets.

It appears from the price lists printed in the accredited trade journals, which are taken from those posted by the various oil companies, and also from the report of the Louisiana conservation commission for the years 1926–1928, all filed in evidence, that in all oil fields throughout the country oil is listed according to gravity, and usually the price is higher for higher gravities, although oils of the same gravity in different fields vary somewhat in price.

In North Louisiana fields oil varies in gravity from below 28 to above 43. In the South Louisiana fields, until recently, oil varied in gravity from below 28 to about 30. Now a new well has been brought in at a depth of 5,000 to 6,000 feet, and produces oil of about 40 gravity. However, in this field oils are graded for sale as "A" and "B." Oil of A grade is of 19 to 26 gravity, should contain not more than four-tenths of 1 per cent. of sulphur, and has definite specifications as to viscosity. It is very desirable for the making of lubricating oil. Grade A oil sells at a flat price, regardless of gravity. All other oil in South Louisiana fields is classed as B grade, and is listed for sale according to gravity. There is a difference in the cost of transporting oil from the wells to the refineries in favor of South Louisiana fields of about 22 cents per barrel.

Taking the figures from the report of the Louisiana conservation commission above mentioned, which will serve as well as any for comparison, it appears that all oil has fluctuated considerably in market price over a period of five years, the tendency being generally downward, and production in Louisiana has fallen off. The prices listed as of February 21, 1928, show oil of 38 plus gravity (taxed at 10 cents) at $1.34 and $1.55 per barrel; oil of above 32 to 36 gravity (taxed at 8 cents) at $1.13, $1.20, and $1.26 per barrel; oil of 20 to 22 gravity (taxed at 4 cents) at 75 cents per barrel; and oil in the Belleview field in North Louisiana of 19 to 20 gravity (taxed at 4 cents) at $1.25 per barrel; oil of A grade of South Louisiana of 26 gravity and below (taxed at 4 cents) at $1.20 per barrel.

Plaintiff's contention as to inequality is based on the above shown discrepancies in the amount of the tax imposed, measured by an ad valorem standard; that is to say, A grade oil is taxed only about 3.3 per cent. of its value, while oil of the same gravity produced by plaintiff is taxed at 5.3 per cent. of its value, and oil of higher gravities, which sells for the same price as A grade oil, is taxed at double the amount per barrel, or about 6.6 per cent. of its value.

█ Undoubtedly a state has the right to impose specific taxes, as well as ad valorem taxes, unless prohibited by the state Constitution. The Constitution of Louisiana expressly authorizes the levying of specific taxes on oil severed from the soil. Specific taxes must bear some relation to value. Cooley on Taxation (4th Ed.) par. 297. If the Legislature had taxed all oil at say 4 cents per barrel, the producers of low-valued oil would have

had just cause to complain. Classification was therefore necessary. Analyzing the figures shown by the evidence, it appears that oil above 28 gravity, while taxed at different rates per barrel, is taxed at about the same rate, say 6.6 per cent., ad valorem, and that all oil below 28 in gravity, leaving out of consideration peculiar properties making it more desirable for the manufacture of lubricating oil, is taxed at about the same rate, say 5.3 per cent. ad valorem. As to the A grade oil of South Louisiana, notwithstanding the advantage it enjoys from closer proximity to the refineries and lower rates of transportation, it is taxed the same as oil in the Belleview field in North Louisiana having similar desirability for making lubricating oil, say 3.3 per cent. ad valorem.

In adopting Act No. 5 of 1928, providing for definite taxes by the barrel and defining different classes of oil, taxable at different rates per barrel, the Legislature was acting well within the authority granted by the Louisiana Constitution.

█ The provisions of the Fourteenth Amendment requiring the equal protection of the laws, as applied to state statutes, have been repeatedly considered by the courts, and the principles governing are well established. As to laws imposing taxes, it is well settled that the states may classify property and occupations for purposes of taxation. The Legislature has a wide discretion in adopting the classification, and it need not be scientifically exact, provided it is reasonable, not arbitrary, not intentionally discriminatory, and rests upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly situated shall be treated alike. The tax need not operate equally throughout the state, provided it is equal as to all persons within a particular district. Louisville Gas Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 72 L. Ed. 770; Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 38 S. Ct. 495, 62 L. Ed. 1154; Toyota v. Hawaii, 226 U. S. 184, 33 S. Ct. 47, 57 L. Ed. 180; Billings v. Illinois, 188 U. S. 97, 23 S. Ct. 272, 47 L. Ed. 400; Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892.

█ It is impossible to have exact equality of taxation, even on an ad valorem basis. Difference of opinion between assessors alone would prevent. If the Legislature had been so minded, they could have divided the North and South Louisiana oil fields into taxing districts and imposed a different rate in each; or they could have classified oil as that more valuable for making lubricating oil, and that

more valuable for making gasoline, and imposed different rates. In classifying oil, the Legislature was not bound to take into consideration all the different properties that oil from different fields might possess, and act accordingly. Nor were they obliged to foresee fluctuations of market value, which with oil, as with any other commodity, depends largely on supply and demand. It is certain that gravity is one means of identifying all oil, is universally used by the trade, and has a definite relation to value in oil of comparatively the same properties. That some inequality of taxation results does not render the classification made by Act No. 5 of 1928 so unreasonable as to infringe the Fourteenth Amendment. There is no basis for holding that the law is intentionally discriminatory, and the tax bears equally on all persons producing the same quality of oil.

The injunction prayed for will be denied, and the bill will be dismissed.