# SMITH v. BAER, Appellant.

### Division One, January 13, 1902.

1. **Reference:** EXCEPTIONS HOW SAVED: NO BILL AT THE TERM. Unless exceptions were saved to the action of the court in ordering a reference, by filing a bill of exceptions at the term at which the order was made, the appellate court will not consider whether or not the case was a proper one for reference. A recital in the bill filed at a subsequent term, when final judgment was rendered, that exception was taken at the time the reference was ordered, is not availing to save the point. If defendant desired to have that action reviewed, he should have filed a bill of exceptions at the term the order was made, and have embodied that term bill in his final bill of exceptions filed after final judgment.

2. ————: ————: ————: MOTION TO REFER TO JURY. The same rule applies to a motion, made after the referee's report has come in, to submit the matters in issue to a jury. Such motion, the ruling of the court thereon, and the exceptions to such motion, must be preserved in a bill of exceptions filed at that term, or the ruling of the court in that regard will not be open to review on appeal.

3. ————: MOTION TO REFER TO JURY: DELAY. A motion to refer some of the matters in issue to a jury should be made before the case is referred. It comes too late after the referee's report has come in.

4. ————: ————: DISCRETION OF COURT. Reference is regulated by statute in this State, and where the items embraced in certain counts of the petition and counterclaim might properly have been submitted to a referee, the court's action in denying a motion to submit the other items to a jury, made after the referee's report has come in, is not an abuse of its discretion.

5. ————: EX POST FACTO ERROR. A reference does not become erroneous *ex post facto* because the developments at the hearing make further examination into the account unnecessary. There is no such thing as a postmortem on the necessity of a reference.

6. **Compulsory Reference:** REVIEW OF FACTS ON APPEAL. The appellate court will not review a finding of fact and weigh conflicting evidence in a case of compulsory reference any more than it would in a reference by consent or in any action at law.

*Observed,* by VALLIANT, J., while concurring in this view, that there is no reason for making any difference in appellate practice in reviewing the findings of facts by a referee in an equity case and his findings in a law suit. As long as the appellate court adheres to the practice of reviewing the findings of fact by a referee in equity cases, and of setting those findings aside and substituting its own when it is of the opinion that the evidence so requires, it should treat his findings of fact in a law suit in the same way.

Appeal from Jackson Circuit Court.—*Hon. Edw. P. Gates,* Judge.

AFFIRMED.

*Brown, Hadley & Swift* for appellant.

(1)   This case was improperly referred to the referee. When any issue in a case is such that, standing alone, it would be triable by a jury, the case can not properly be referred. The reference of such a case is a violation of section 28, article 2, Constitution.   R. S. 1889, sec. 2138; Evans v. Kalbfleisch, 16 Abb. Prac. (N. S.) 13; Townsend v. Hendricks, 40 How. Prac. 143; Wheeler v. Falconer, 30 Sup. Ct. (N. Y.) 45; Rose v. Combes, 37 Sup. Ct. (N. Y.) 289; Ice Co. v. Tamm, 138 Mo. 385.   (2)   The account sued on in this case, as shown by the exhibit attached to plaintiff's petition, was not such an account as to entitle the plaintiff to a compulsory reference.   Ice Co. v. Tamm, supra; Martin v. Hall, 26 Mo. 386; Dooley v. Barker, 2 Mo. App. 325; Dickerson v. Mitchell, 19 Abb. Prac. 286. (3)   Cases in which the determination of a given issue may render the examination of an account unnecessary are not referable under the statutes. Graham v. Golding, 7 How. Prac. 260; Morrison v. Horricks, 40 Hun 428; Morrison v. Van Benthuysen, 103 N. Y. 675; Thornton v. Life Assn., 7 Mo. App. 544.   (4)   The referee found on the second count of plaintiff's amended petition that there was no liability on the

part of defendant. This finding of fact was not excepted to by plaintiff, and rendered the examination of an account unnecessary. As the cause then stood before the court, there was no issue by virtue of which plaintiff was entitled to a reference, and the motion of defendant, to send the remaining issues in the case to a jury, should have been sustained. Bank v. Owen, 101 Mo. 558. (5) The first, second and fourth findings of fact by the referee were against the weight of the evidence and wholly unsupported by the evidence. In cases of compulsory reference this court has the same authority to review the facts as though the case were one in equity. Cahill, Swift & Co. v. McCornish, 74 Mo. App. 609; Wentzville Tob. Co. v. Walker, 123 Mo. 671.

*Ashley, Gilbert & Dunn* for respondent.

(1) The propriety of the action of the trial court in referring the case is not before this court for review, because no exception was preserved by appellant to such order at the term the order was made or within any extension of time from said term. State ex rel. v. Johnson, 132 Mo. 110; Asphalt Paving Co. v. Ullman, 137 Mo. 564; Vette v. Geist, 155 Mo. 36. (2) The action of the trial court in overruling appellant's motion to submit to a jury the issues found against him by the referee, is also not here for review, as no exception was saved by appellant to this order at the term when made or within any extension of time from said term. Cases cited under point 1. (3) It was too late after the filing of the report of the referee to raise the objection that the cause was not one authorizing a reference. After the referee's report, it is likewise too late to move to submit the issues to the jury or to ask for a separate trial of the issues. Young v. Powell, 87 Mo. 130; R. S. 1899, sec. 694. The question of reference must in every case be determined by the face of the pleadings. Father Mathew Society v. Fitzwilliams, 12 Mo. App. 447;

Affirmed in 84 Mo. 406; Francisco v. Rowland, 14 Mo. App.
600. A reference does not become erroneous *ex post facto*
for the reason that the evidence was such on the hearing as to
supersede to some extent the examination of the account.
Johnson v. Blcll, 61 Mo. App. 40; Vail v. Jacob, 10 Mo. App.
582; Vette v. Geist, 155 Mo. 27. Aside from the second
count of plaintiff's petition, the number and variety of de-
fenses set up in defendant's answer would alone have auth-
orized the reference of the cause as involving the examination
of a long account between the parties. Smith v. Haley, 41 Mo.
App. 611; Schmidt v. Rose, 6 Mo. App. 578; Briscoe v.
Kinealy, 8 Mo. App. 76; Small v. Hatch, 151 Mo. 300; Ittner
v. St. Louis Assn., 97 Mo. 568; State ex rel. v. Johnson, 132
Mo. 110. (4) Questions are not properly raised upon a
referee's report by a mere general exception, as here, that the
findings are against the evidence and the weight of the evi-
dence, which, in the case of a mass of testimony which the
trial court has not heard, gives no clue; but by specifications
showing distinctly the particular findings objected to, and the
grounds of objection. Hornblower v. Crandall, 78 Mo. 581;
Dallas v. Brown, 60 Mo. App. 493; Singer Mgf. Co. v. Givens,
35 Mo. App. 602; Smith v. Haley, 41 Mo. App. 611; Whit-
ing v. Crandall 78 Mo. 5,93; Cahill, Swift & Co. v. McCornish,
74 Mo. App. 609. (5) Appellant claims this was not a proper
case for compulsory reference, but having saved no proper
exception to the order of reference, now asks this court to
review the facts on the ground of its being a case of compul-
sory reference. However, the evidence is not reviewable for
failure of appellant to furnish a fair, impartial and complete
abstract, as the whole evidence should be set out as in an
equity case, if the findings of fact are to be reviewed. Drug
Company v. Saunders, 70 Mo. App. 228; Garrett v. Coal
Mining Co., 111 Mo. 282; Brand v. Cannon, 118 Mo. 598;
McCullough v. De Witt, 163 Mo. 306; Doherty v. Noble, 138
Mo. 32; Tobacco Co. v. Walker, 123 Mo. 670; Bank v. Iron

Co., 97 Mo. 43; Trimble v. Wollman, 62 Mo. App. 541; Nolan v. Johns, 126 Mo. 167. (6) The referee, having heard the living witnesses and observed their demeanor, and examined the mass of testimony, exhibits and correspondence between the parties, being therefore in position to judge of the credibility of the testimony, the burden of proof also being on the defendant, and the trial court, with the whole record before it, having confirmed the findings of the referee, this court will defer to such findings, even if holding that it has a right to review the findings of fact on the incomplete record in this case, especially when, as here, there was ample evidence to sustain the findings. Mathias v. O'Neill, 94 Mo. 530; Douglass v. The Douglass Bagging Co., 94 Mo. 234; Warren v. Nickels, 72 Mo. App. 486; Taliaferro v. Evans, 160 Mo. 380.

MARSHALL, J.—For a clearer understanding of this case the issues and findings of the referee and the material proceedings in the case will be stated in their relation to each other.

The first count of the petition is based on a note for $1,200, executed by the defendant to the plaintiff on September 28, 1889, with ten per cent interest. The answer admits the execution of the note and pleads payment. The referee found that it was not paid, and recommended a judgment for the plaintiff thereon.

The second count of the petition seeks to recover $5,710, being one-half of the losses incurred and paid by the plaintiff in a mining speculation in Arizona, in which the parties, with one Boaz, were interested. The answer admits the mining speculation but denies that the defendant owes the plaintiff anything on account thereof, and on the contrary says the plaintiff expended money for the incorporated company that owned the mines and not for the defendant personally, and avers that the defendant put in $2,772.34 for the company, and charges that

the plaintiff sold $7,500 worth of ore belonging to the company and never accounted for it, and therefore says if he is liable to the plaintiff for any part of the losses paid by him, he (defendant) is entitled to credit for one-half of the $7,500 and for the $2,772.24. The plaintiff claimed that he and the defendant verbally agreed to share the losses equally, because Boaz was unable to pay anything, and that this agreement was reduced to writing and signed by the parties on November 8, 1890. The defendant claimed that he only agreed to be liable for one-third of the losses (the plaintiff and Boaz to stand the other two-thirds) prior to the execution of the written agreement of November 8, 1890, and that agreement was intended to operate only prospectively. The referee found in favor of the defendant on this count, and both parties acquiesced in the finding. So that it is not before this court on its merits, but only as it bears upon the question hereinafter to be discussed as to the propriety of the reference of the case.

The parties were formerly partners in other business in Kansas City, and upon its termination the defendant owed the plaintiff $875.58. The third count of the petition seeks to recover that sum. The answer admits that the defendant owed plaintiff that sum when the partnership was dissolved, but denies that he owes him anything at this time "as the plaintiff is indebted to him in an amount greatly in excess of the amount of said balance so found to be due." Whether the debt had been wiped out depended upon the application of the proceeds of a note for $5,000, made by defendant to the plaintiff, which will be hereinafter referred to. The referee found that the balance was still due the plaintiff, and recommended a judgment for that amount.

The defendant pleaded three counterclaims, as follows:

*First.* That he executed two notes for one thousand dollars each to the National Bank of Commerce, the proceeds of which went into the mining speculation; that he afterwards

executed to the plaintiff a note for $5,000, secured by deed of trust, which was to be used to pay off said two notes; that the plaintiff sold the note for $5,000, but applied only $500 on one of the one thousand dollar notes, and that the defendant was obliged subsequently to pay the balance of said notes amounting to $1,611.90, and he asked judgment against the plaintiff for that amount.    Upon the trial it appeared, and the referee found the facts to be, that one of the one thousand dollar notes was the joint note of the defendant, the plaintiff and Boaz, while the other one thousand dollar note was the defendant's own note which the plaintiff and Boaz had indorsed as an accommodation for the defendant and that the defendant had received the proceeds thereof; and further that when the $5,000 note was executed, the defendant directed the plaintiff to pay the joint note out of the proceeds of the $5,000, but that the plaintiff had only paid $500 on the $1,000 joint note, and, therefore, the referee gave the defendant judgment on this counterclaim for $611.90.    The defendant further claimed on the trial that when he executed the $5,000 note, he directed the plaintiff, after paying the two one thousand dollar notes, to apply the balance to the payment of the $1,200 note, sued on in the first count of the petition, and of the $875.88, sued for in the third count of the petition, and to send him (the defendant) the remainder of $500 to $1,000, and that instead of doing so, the plaintiff only paid $500 on the joint note for one thousand dollars, and that he kept the difference.    The fact appeared, however, that the plaintiff expended the balance in the mining venture, and gave the defendant credit therefor in his statement attached to the second count of the petition.    The referee found that there were no specific directions given by the defendant to the plaintiff to apply any part of the proceeds of the $5,000 note to any note or indebtedness except to the $1,000 joint note, but that the balance of the $5,000 note was to be used in the payment of expenses incurred and to be incurred in the mining business;

that while the defendant expected the plaintiff to remit him some part of the said proceeds, there was no definite agreement of any particular amount, and that the plaintiff properly applied said proceeds, except as to the $611.90 balance due on the $1,000 note, for which he recommended that the defendant have judgment.

*Second.* The defendant claimed in his second counterclaim, that he contracted to sell the plaintiff 4,500 shares of his stock in the mining company for one dollar and a half a share, aggregating $8,250 (?); that 2,500 of said shares of the value of $3,750 were delivered to the defendant, and 3,000 (?) shares of the value of $4,500, were attached to the two notes of $1,000 each, above referred to, which the plaintiff was to pay, and take up the collateral; that afterwards the defendant agreed to sell said shares to one Bristow, for $1.50 a share (here the sequence ends), and judgment is asked against the plaintiff for $8,250. There was no substantial evidence to support this claim, and the referee found that no such contract was ever made by the defendant with the plaintiff.

*Third.* The third counterclaim alleges that Boaz made his note for $6,885.42, to the order of the plaintiff and the defendant, and secured it by 5,000 shares of the mining company of the value of $7,500, belonging to Boaz, and by Boaz's interest in 2,500 shares of said company that stood in the name of A. J. Rupert, alleged to be worth $1,000, and by Boaz's interest in 6,000 shares of said company that stood in the name of plaintiff as trustee, alleged to be worth $3,000, and by 50 shares of the Western Land and Live Stock Company, alleged to be worth $5,000; and that plaintiff indorsed said note for $6,885.42 to himself and appropriated all of the collaterals to his own use, and recovered a judgment in his own name on the note against Boaz for $9,926.47, and the defendant asked judgment against the plaintiff on this count for $8,250. The reply admitted the note and the judgment thereon and denied that the plaintiff had ever received anything thereon, because

of Boaz's insolvency, and further averred that the defendant had indorsed the note and collaterals to the plaintiff as security for what the defendant owed the plaintiff, and offered to assign a half interest in the judgment and the collaterals to the defendant upon the payment by defendant of the said indebtedness. At the trial the defendant admitted that he indorsed the note and collaterals to the plaintiff, and that Boaz was insolvent. The referee found that the plaintiff had never realized a cent on the note or judgment or collaterals and had not used the collaterals in any manner so as to render himself liable therefor, and recommended a judgment for the plaintiff on the third counterclaim.

The referee, therefore, recommended a judgment for the plaintiff on the first count for $1,200, and upon the third count for $875.88, and a judgment for the defendant upon the first counterclaim for $611.90, which, deducted from the judgment for the plaintiff, left a balance due the plaintiff of $1,463.98.

The circuit court confirmed the referee's report and entered the judgment recommended, on July 24, 1897. This appeal was taken on January 7, 1898, and time granted for filing a bill of exceptions, which was properly extended from time to time, and the bill filed on July 7, 1898.

The bill of exceptions recites that the defendant objected to the reference of the cause and excepted to that action of the court. That order was made November 9, 1895, and this bill of exceptions was filed July 7, 1898. There was no bill of exceptions filed during the term at which the order of reference was made.

Upon the coming in of the referee's report, during the April term, 1897, the defendant filed a motion to submit the first and third counts of the petition and the second and third counterclaims to a jury. This motion was overruled at the April term, 1897, and this bill of exceptions recites that the defendant excepted, but no term bill of exceptions was filed during the April term, 1897, preserving said motion or any

exception.    On the same day the judgment was entered on the referee's report, and within four days thereafter the defendant filed a motion for a new trial.    This motion was overruled on October 23, 1897, which was during the October term of the court.

### I.

The principal error alleged is the action of the court in sending the case to a referee.

It is contended that this was not a proper case for a reference under section 698, Revised Statutes 1899, and, hence, the court had no power to refer it, and that the parties never consented in writing to the reference as allowed by section 697.

This question is not open to review in this case, for the reason that the order of reference was entered on November 9, 1895, during the October term, 1895, and no bill of exceptions was filed during that term saving any exception to the action of the court.    The recital of the facts in the only bill of exceptions that was ever filed in the case, to-wit, on July 7, 1898, during the April term, 1898, is wholly unavailing to save the point.    If the defendant desired to have that action reviewed he should have filed a bill of exceptions, to that ruling, at the October term, 1895, and have embodied that term bill of exceptions in his final bill of exceptions filed after final judgment, at the April term, 1897.    This he failed to do, and there is therefore nothing before this court showing that any exception was taken or saved to the ruling of the circuit court in this regard.    [State ex rel. v. Johnson, 132 Mo. l. c. 110; Asphalt Paving Co. v. Ullman, 137 Mo. l. c. 564; Vette v. Geist, 155 Mo. l. c. 35.]

Vol 166 mo—26

## II.

Error in denying the defendant a trial by jury upon the first and third counts of the petition and upon the second and third counterclaims, is next assigned.

The final bill of exceptions embodies the motion and the overruling of the same and recites that the defendant excepted. The motion was not a part of the record proper and could only be made so by a bill of exceptions. It appears from statements in the final bill of exceptions to have been filed at the April term, 1897, and to have been overruled at the same term, and no term bill of exceptions was filed preserving the motion, the ruling or the exception. What is said in paragraph I, supra, applies equally here.

But even if the question was open to review, there is no merit in the claim. The motion came too late. The right should have been asserted before the case was referred. A party can not take chances of winning before a referee, and when he fails, demand a jury trial in the circuit court after the referee's report is filed. [Young v. Powell, 87 Mo. l. c. 130.]

It is urged, however, that there were three counts of the petition and three counterclaims, and that while it might be said that a reference was proper as to some of the issues, there was no necessity for a reference as to the others, and that as to them the defendant was entitled to a trial by jury, and counsel cite some New York cases that hold such a practice proper. But section 694, Revised Statutes 1899, regulates such matters in this State. The power to try several counts in a petition (or several counterclaims) separately is given to the trial court, but it is a matter of discretion with the court, and that discretion will not be reviewed unless it was clearly abused. [Hunt v. Railroad, 14 Mo. App. 160; Needles v. Burk, 98 Mo. 474; McFarland v. Railroad, 125 Mo. l. c. 275; Young v. Powell, 87 Mo. l. c. 130.]

It is further contended that as the referee found for the

defendant on the second count of the petition and as this was the only count of the petition under which it could possibly be contended that a reference was proper, defendant was entitled to a jury trial on the remaining counts of the petition and upon the counterclaims. This is wholly untenable. As plaintiff's counsel designate it, this is an *ex post facto* method of determining the propriety of the order of reference. It might be termed a *post mortem* held upon the necessity for a reference.

## III.

It is finally contended that as this was a compulsory reference, the defendant is entitled to have this court review the finding of facts, as in equity cases, and it is insisted that the finding of the referee is not only against the weight of the evidence but that there is no evidence to support it.

In Wentzville Tobacco Co. v. Walker, 123 Mo. l. c. 671, it was said that the law is settled in this State, that in cases of compulsory references, the trial court had a right to review the finding of fact by a referee. It was also said that *assuming* that this court has the power to review the ruling of the trial court in this regard, it could not be done in the state of the record in that case. This remark applies with full force to the case at bar. The appellant's abstract of the record states that as he admits there was sufficient evidence to support the findings of fact by the referee as to the second and third counts of the petition and as to the second and third counterclaim, he omits the evidence bearing on these matters, and that the evidence bearing upon the question of whether the defendant directed that any part of the $5,000 note should be applied upon the payment of the $1,200 note sued on in the first count of the petition, was as he states it. He then gives one question and one answer, covering six lines of the plaintiff's testimony, which relates solely to the credits the plaintiff gave the defendant in his exhibit to the second count of the petition

(on which count the referee found for the defendant, and both parties acquiesced) and not a word of which bears upon the application of the proceeds of the $5,000 note, and then he gives seven pages of the testimony of the defendant, among which the defendant testified that the $1,200 note was to be paid out of the proceeds of the $5,000 note, and in addition he embodies two letters from the defendant to the plaintiff, in neither of which is anything said by the defendant about the $1,200 note or the application of the proceeds of the $5,000 note. On the other hand, the plaintiff's counsel have presented a counter abstract of the record, covering thirty pages, and covering the testimony of both parties, and eight letters from the defendant to the plaintiff (in addition to the two contained in the defendant's abstract) and thereupon contend that the evidence and the letters furnish sufficient evidence to support the plaintiff's contention and the referee's finding that there were no directions by the defendant to the plaintiff to apply any of the proceeds of the $5,000 note to the payment of the $1,200 note or the $875.88 open account or to any other note except the $1,000 joint note made by the plaintiff and defendant and Boaz, and referred to in the first counterclaim upon which the referee gave a judgment for the defendant.

The abstract furnished by the defendant is not sufficient to inform the court whether the contention of the defendant that there is no evidence to support the referee's finding upon the first count of the petition, is well taken or not. If the defendant desired to have this court determine whether there was any substantial evidence to support the finding of the referee, he should have made a reasonably fair and full abstract of the record so that the court could decide for itself whether there was any evidence or not. The rules require that abstracts must "set forth so much of the record as is necessary to a full and complete understanding of all questions presented to this court for decision." The appellant can not shift this duty upon the respondent. [Brand v. Cannon, 118

Mo. 595.]   But though the trial court has power and should review the finding of fact by a referee, it does not follow that this court will do so.    [Utley v. Hill, 155 Mo. l. c. 277.]

But we are not content to rest the decision of this contention upon this principle or upon the failure to comply with the rules. There is much more cogent reason for refusing to consider the evidence upon this contention, and that is, no such issue was raised by the pleadings in the case. On the contrary, the only averment in the answer with reference to the application of the proceeds of the $5,000 note, is in the fifth paragraph of the answer (which was the first counterclaim) and in that it is only averred that the two one thousand dollar notes were to be paid out of the discount of the $5,000 note.   There is no allegation in any of the pleadings that any part of the proceeds of the $5,000 note was to be applied towards the payment of the $1,200 note or the open account for $875.88.   The plaintiff was not required, therefore, to controvert anything the defendant said in his testimony about the $5,000 note except as to the two one thousand dollar notes, and this he did controvert, successfully as to the one in which he and Boaz were accommodation indorsers for the plaintiff, and unsuccessfully as to the other joint note.

But aside from all this the evidence discloses that the plaintiff did not appropriate all of the proceeds of the $5,000 note, except $500, to his own use, as the defendant inferentially charges, but on the contrary he used it in the prosecution of the mining business, for the defendant's benefit, and gave the defendant credit for the whole of the $5,000 in his statement of account in respect to that business.   And the defendant admits that prior to November 8, 1890, he had agreed to stand one-third of the losses on that business, and one-half after that date, and the evidence shows that even after being credited with the $5,000 note, the defendant was still indebted to the plaintiff on a basis of one-third.   The only apparent reason why the referee decided against the plaintiff on his

second count, which related to the mining business, was because the plaintiff declared on an express contract to stand one-half of the losses, and failed to prove the contract as alleged, although the defendant admitted that he had agreed to stand one-third of the losses.

The evidence as a whole, however, including the defendant's letters as late as May, 1892, long after the $5,000. note had been discounted and the proceeds used in the mining venture, afford ample basis for the finding of the referee, on the question of the application of the proceeds of the $5,000 note.

It must not be understood, however, that it is intended by anything that is said herein, that this court will weigh conflicting evidence in a case of compulsory reference any more than it would in a reference by consent. [Utley v. Hill, 155 Mo. l. c. 277.] If the court had the power to refer the case, that is, if it was a proper case for a reference, there is no difference in principle between the effect of a finding of fact in such case and in any other case at law. Under the Constitution, this court has a right to review the facts as well as the law in any case, however it might have been tried, but it has not been its practice to do so, except in extreme cases, in actions at law, for the reason that experience has shown that it was not necessary to do so to insure a proper administration of justice. The reason for a different practice in equity cases has ceased to exist ordinarily, because equity cases are tried on oral testimony now instead of on written testimony as formerly, but the practice still obtains, without any sufficient reason therefor. There is no more reason why this court should review the findings of a chancellor in an equity case, where all the testimony was given by living witnesses, orally, than there is why it should review the verdict of a jury rendered under like conditions in a case at law. Certainly the trained legal mind of the chancellor is as capable of reaching as correct a conclusion as to the facts as the untrained minds of the ordinary jurors,

still the practice obtains in equity cases. But no good reason appears for extending the practice to cases tried by referees, even though the reference was compulsory, and it will not be done. This court always looks into the record, when requested, and the point is properly made in the lower court, far enough to see whether there is any substantial evidence to support a finding of fact, by whomsoever that finding is made and this is as far as experience shows that it is necessary, ordinarily, to go.

The judgment of the circuit court was for the right party, and finding no reversible error, that judgment is affirmed. *Brace, P. J.*, and *Valliant, J.*, concur; *Robinson, J.*, concurs in result, and in the opinion except in so far as it states the right of this court to review the facts as well as the law in any case.

### SEPARATE OPINION.

VALLIANT, J.—Whilst concurring in the able opinion above, I desire to add that I see no reason for making any difference in appellate practice in reviewing the findings of facts by a referee in an equity case and his findings in a law suit. It may be as pointed out above by the learned author of the opinion that the chief reason upon which the action of appellate courts in reviewing the findings of facts by the chancellor in equity cases has ceased since the original evidence in such cases no longer consists in documents and depositions alone as it did of old, yet, if such is the case, the practice of appellate courts in that respect has not ceased with the reason. This court does weigh the evidence in equity cases, and makes its own findings of facts. I can see why there should be a difference observed in this respect between the findings of facts by a chancellor and the verdict of a jury. The difference in the modes of trial suggest a difference in the modes of review. And especially, since a verdict of the jury before it reaches the ap-

pellate court is reviewed by the trial judge who, having seen and heard the witnesses, and observed the conduct of all the parties at the trial, is better able than the appellate court to judge of the correctness of the verdict. The findings of a chancellor, however, are not subjected to that test before they come up for review on appeal; the motion for new trial or re-hearing is heard by the same chancellor and he passes judgment on his own previous rulings.

But whatever may be said of the propriety of reviewing the findings of a chancellor, those of a referee stand on a different footing. In trials before a referee there is no difference in mode in an equity case and a law case. It will not be disputed that it is the duty of a trial court to review the evidence and set aside the findings of the referee if in the opinion of the trial judge they are against the decided weight of the evidence. This he must do in an equity as well as in a law suit. Yet the trial judge in that respect is not in any better position to weigh the evidence than is the appellate court; he has seen none of the witnesses and has only what the appellate court has, that is, the record of the testimony as returned by the referee.

Therefore, I maintain that as long as we adhere to the practice of reviewing the findings of fact by a referee in equity cases, and setting those findings aside and substituting our own when we are of the opinion that the evidence so requires, we should treat his findings of facts in a law suit in the same way.