## KLINE CLOAK & SUIT COMPANY v. A. F. MORRIS and SOUTHWESTERN SURETY INSURANCE COMPANY, now known as SOUTHERN SURETY COMPANY, Appellants.

Division Two, April 7, 1922.

1. **REFERENCE: Exceptions to Order For: Term Bill of Exceptions.** In order to have the action of the trial court in ordering a reference in a cause, or in refusing to set aside such an order, reviewed by the appellate court, the party complaining thereof must except to such order and preserve his exceptions in a bill of exceptions filed at the term at which such order was made, or under leave, granted at such term, file the same at a later time. It is not sufficient to embrace such exceptions in a general bill of exceptions, filed under leave of court given at a subsequent term at which judgment was entered and after the appeal was granted.

2. ————: ————: ————: **Statutory Relief.** Laws 1911, page 139, now Section 1460, Revised Statutes 1919, did not abolish the necessity for term bills of exceptions to preserve for review exceptions to the action of the trial court in respect to rulings not made during the progress of the trial, inasmuch as that statute applies only to exceptions taken during the progress of the trial.

3. ————: ————: ————: **Record Entries.** The fact that the record entries on the records of the trial court, showing the action of the court, ordering a reference and overruling the motion to set aside such order, show that appellant excepted to such action of the court, is not sufficient to preserve such exceptions for review, as such entries are not part of the record proper, and can only be made part of the record by proper and timely bill of exceptions.

4. ————: **Jury Trial: Arbitration.** In a suit on a building contractor's bond, it is too late, after a referee's report has been filed, to move for a trial by jury or to insist upon arbitration provided for in the contract.

5. ————: **Referee's Report: Review by Appellate Court: Action at Law.** In an action at law, the findings of fact made up by a referee, when approved and confirmed by the trial court, occupy the same status, on appeal, as the verdict of a jury, and will not be disturbed if supported by substantial evidence.

6. ————: ————: ————: **Act of 1919: Application.** The Act of 1919 (Laws 1919, page 213; now Sec. 1444, R. S. 1919), to the effect

that on appeals in all cases, whether at law or in equity, in which a referee has been appointed and made a report, the appellate court shall, on exceptions properly preserved, review the evidence and the findings of fact and conclusions of law of the referee and the trial court, and give such judgment as shall be comformable to the law on the evidence, does not apply to a case wherein the appeal was allowed and the transcript of the judgment and order granting the appeal was lodged in the appellate court before the effective date of the act, which could not be earlier than August 7, 1919.

7. ——: ——: ——: ——: **Unconstitutional.** The above act (Laws 1919, p. 213) is unconstitutional. [Following State ex rel. v. Wilson, 288 Mo. 315, 232 S. W. 140.]

8. ——: ——: ——: **Conflicting Evidence: Accord and Satisfaction: Omitted Stipulations.** The referee's findings against defendants, approved and confirmed by the trial court, and based on conflicting substantial evidence, are conclusive on the appellate court on the issues of accord and satisfaction, and of an alleged agreement between plaintiff and the contractor defendant as to a mistake in omitting from his bid the costs of lumber and ornamental iron, pleaded by defendants.

9. **SURETY COMPANIES: Bond: Building Contract: Alteration: Construction.** The reason for applying the strict rules of suretyship fails in the case of sureties for hire. The bond in this case indemnified the plaintiff against damages accruing to it by reason of the failure of the contractor to faithfully perform his contract and specifically referred to the plans and specifications covered by said contract, and made the same part of such suretyship agreement. The specifications provided for alterations in, additions to or omissions from the work therein included, without in any way affecting or avoiding the contract or the bond, and contained a clause that it was expressly agreed by all the parties that such alterations should be understood to have no effect upon the security or validity of the contractor's contract or bond, and any agreement to the above effect, by virtue of this clause, should inherently be considered to contain the waiving of any qualifying condition of the bond. The surety company, therefore, will not now be heard to say that alterations and extra work were done without its knowledge or consent, or to take advantage of the omission of written orders for such work at the time it was done, such written orders of the architects, covering all the extra work done by the contractor which was allowed by the referee, having been made subsequent to the doing of the work.

10. ——: ——: ——: **Attorneys' Fees.** . The building contractor's bond in this case fixed the liability of the defendants to plaintiff

for attorneys' fees, and on the evidence in this case the allowance of $2500 was not excessive.

11. ———: ———: ———: Counterclaim for Extras and Bonus: No Certificate of Architect. The counterclaim of defendants, so far as it was for extra work, rested largely for support upon the same evidence which was introduced to defeat plaintiff's recovery on its petition, and having been disallowed by the referee and the trial court, such disallowance is approved. In so far as such counterclaim was based upon a claim for a bonus, provided for by the contract, for completing the work before the time fixed in the contract, which completion was alleged to have been prevented by the requirement of alterations and extra work, such claim being largely based upon speculation and there being no certificate by the architects, as provided by the contract, that an extention of time was necessary for doing the work by reason of such alterations and extra work, the disallowance of this claim is approved.

Appeal from Jackson Circuit Court:—*Hon. Daniel E. Bird*, Judge.

AFFIRMED.

*Guthrie, Conrad & Durham, J. Harold Olson* and *Hale Houts* for appellants.

(1) The court erred in referring the case and in overruling the motions to set aside the reference. (a) The petition did not present a case for reference under the statute. R. S. 1909, sec. 1996; Browning v. Ry. Co., 224 S. W. 748; Ice Co. v. Tamm, 138 Mo. 385; Reed v. Young, 248 Mo. 606; Invest. Co. v. Jones, 187 S. W. 71; Thornton v. Life Assn., 7 Mo. App. 544. (b) Issue was joined by the defendants on the petition, defendants disputing the entire claim, pleading accord and satisfaction. The case was therefore not made one for reference by reason of the counterclaim of one of the defendants pleaded in addition to the defense of accord and satisfaction. 23 R. C. L. 291; Steck v. C. F. & I Co., 142 N. Y. 236; Snell v. Paper Mills, 86 N. E. (N. Y.) 460; Sec. 28, Art. 2, Sec. 8, Art. 13, Mo. Constitution; R. S. 1909, sec. 1996; R. S. 1855, sec. 13; Johnson v. Pump Co., 274 Mo. 436; Empire Trans. Co. v. Boggiano, 52 Mo. 294; Grayson v.

Weddle, 80 Mo. 42; Buckner v. Land Co., 190 S. W. 420.
(2) Regardless of whether either the petition or the
counterclaim stated a long account the court erred in
referring the case until a jury passed upon the issue of
accord and satisfaction pleaded by defendants, and erred
in overruling motion of defendants for trial of this issue
by a jury. 23 R. C. L. 290; Kansas City v. Smith, 238
Mo. 336; Malone v. Church, 172 N. Y. 278; Hill v. Rey-
nolds, 189 N. Y. 558; Post v. Van Sielen, 117 N. Y. Supp.
554; Star v. Selleck, 122 N. Y. Supp. 1054; E. Clemens
Horst Co. v. Stocker, 119 N. Y. Supp. 372; Bank of Tar-
bow v. Fidelity & Dep. Co., 35 S. E. (N. C.) 588; Atlantic
v. Morrison, 82 N. C. 141. (3) The evidence established
an accord and satisfaction as between plaintiff and de-
fendant Morris. Judgment should have been in favor of
defendants on plaintiff's petition. (a) Accord and
satisfaction was shown to have been agreed upon for
valuable consideration and acted upon by the parties.
Pollman Coal Co. v. St. Louis, 145 Mo. 651; Oil Well
Supply Co. v. Wolfe, 127 Mo. 616; Bahrenburg v. Fruit
Co., 128 Mo. App. 536. (b) Morris being released, the
surety company was of course released. Hempstead v.
Hempstead, 27 Mo. 187; State to use v. Coste, 36 Mo.
438; Stolze v. Fidelity & Guaranty Co., 153 Mo. App. 29.
(4) Even should it be held that there was no accord and
satisfaction, appellants should be credited with the value
of the ornamental iron and lumber not taken into con-
sideration by Morris in making his bid and which the
respondent agreed to pay Morris in addition to the con-
tract price. The evidence clearly established the mistake
and it being called to the attention of respondent before
the work was commenced and when the parties, at least
when respondent, could be put in *status quo*, Morris was
entitled to a rescission if not to reformation. This right,
coupled with respondent's necessity to have the work
done promptly, furnished ample consideration for re-
spondent's modification of the contract and promise to
allow Morris the value of items overlooked by him in
addition to the contract price. Norton v. Bohart, 105

Mo. 615; Miller v. Brick Co., 139 Mo. App. 25; Goodin Mer. Co. v. Organ, 186 S. W. 589; Moffat v. Rochester, 178 U. S. 373. (5) By the undisputed evidence and findings of the referee which stand unchallenged, Morris's contract with respondent was altered in a manner not in said contract authorized, to-wit, extras and alterations were agreed upon and performed without the written order of the architect countersigned by respondent. This constituted a breach by respondent of the contract secured by the bond and the changing of the obligation of the surety, and the surety company was thereby released from the bond. Burns v. Wolfs, 116 Mo. 179; Evans v. Graden, 125 Mo. 79; Lumber Co. v. Gates, 89 Mo. App. 201; Eldridge v. Fuher, 59 Mo. App. 44; Killoren v. Meehan, 55 Mo. App. 427; Burns Estate v. Fidelity & Dep. Co., 96 Mo. App. 471; Chapman v. Eneberg, 95 Mo. App. 132; Neuwirth v. Moydell, 188 Mo. App. 467; Reissaus v. Whites, 128 Mo. App. 147. (6) The court erred in sustaining referee's finding and allowance as to attorneys' fees and giving judgment therefor. (a) The sum of $2500 on the evidence was a wholly unreasonable allowance for attorneys' fees. There was no differentiation or division of services and therefore there was no evidence as to the nature or value of services sued for. Plaintiff was of course bound by allegations of its petition and could not recover in excess of the amount claimed. Hall v. Coal & Coke Co., 260 Mo. 323; Pinney v. Berry, 61 Mo. 366; Slaughter v. Railroad, 116 Mo. 275. (b) Under plaintiff's petition it was entitled to recover attorneys' fees only in connection with the payment of the sum of $8,000 paid by it over and above that with which it claimed the contractor was entitled to be credited. (7) The court erred in overruling defendant's exceptions to the report of the referee disallowing appellant Morris's counterclaim. Under the evidence appellant Morris was entitled to recover part or all of the amount asked for in his counterclaim.

*J. Sydney Salkey* and *J. C. Rosenberger* for respondent.

(1)   The court properly referred the issues to a
referee.  (a)  By the failure of defendants to file a term
bill of exceptions, the order of reference is not open to
review.  Smith v. Baer, 166 Mo. 401; State ex rel. v. Ice
Co., 246 Mo. 198; Dean v. Railroad, 229 Mo. 439.  (b)
The motion to vacate the reference, filed after most of
the evidence had been heard by the referee, after plain-
tiff had rested its case before the referee, and after de-
fendants had introduced proofs, and the motion for a
jury trial after the referee had filed his report, came too
late, were properly overruled, and moreover were not
preserved by any term bill of exceptions.  State ex rel.
v. Ice Co., 246 Mo. 198; Smith v. Baer, 166 Mo. 401;
Young v. Powell, 87 Mo. 130.  (c)  Nor is the necessity of
filing a term bill of exceptions done away with by the
Act of 1911, which permits the bill of exceptions taken
during the trial to be filed on or before the date on which
appellant must serve his abstract of the record.  Laws
1911, p. 139.  That act expressly relates only to "such
exceptions" as are mentioned in Sec. 2028, R. S. 1909,
namely exceptions taken "in the progress of any trial."
The Act of 1911 has no relation to exceptions taken to
rulings made prior to the trial; these must still be saved
by a term bill in order to be preserved.  State ex rel. v.
Gill, 220 S. W. 980; Kean v. Schnedler, 92 Mo. 524;
Barber Asphalt Co. v. Ulman, 137 Mo. 564; Paige v.
Shoe Co., 103 Mo. App. 662.  (d)  Appellants contend
that, conceding that the case involved the examination
of a long account, there were other issues in the case,
such as an alleged "accord and satisfaction," to which
they, as it is claimed, were entitled to a trial by jury and
which should have been first tried and determined ad-
versely to them before the case was sent to the referee
to state the accounts, and in support of this contention
they cite certain New York cases.  The same contention
has been made and held to be without merit by this court.
Smith v. Baer, 166 Mo. 402.  (e)  The petition alone does
not determine whether a cause is referable as involving
a long account; the question of referability is deter-
mined by the issues raised by all of the pleadings, those

of the defendant as well as those of the plaintiff. Johnston v. Pump Co., 274 Mo. 414; McCormick v. St. Louis, 166 Mo. 315; St. Louis to use v. Parker-Washington Co., 271 Mo. 229; Smith v. Haley, 41 Mo. App. 611; Briscoe v. Kinealy, 8 Mo. App. 76, 78; Kenneth Inv. Co. v. Black, 96 Mo. App. 125. (2) The findings of the referee that there had been no accord and satisfaction should not be disturbed. (3) It is insisted that Morris was released from his contract for that in making his bid he made a mistake by omitting to figure on lumber and iron, and that after he had torn down the old buildings on the Walnut Street side, he informed plaintiff's manager, Clark, of his alleged mistake and asked to be let out of his contract, and that Clark told him to go ahead with the work and that plaintiff would pay for his iron and lumber, amounting to about $8,000. The mere fact, if it be a fact, that Morris made a mistake in his bid, would not relieve him of his contract, even if the evidence had not shown that the mistake was due solely to his own carelessness, for which plaintiff in no wise was responsible. Such mistake would be purely unilateral or one-sided, and conferred no rights on Morris, legal or equitable. Mistake by one party to a contract, not induced or contributed to by the acts of the other party, furnishes no ground for the rescission or cancellation of a contract, even in equity, and hence would furnish no consideration for a promise by the other party to relieve him from such mistake. 9 Cyc. 394-395; 6 R. C. L. 623; Vallentyne v. Land Co., 95 Minn. 195; Spellman v. Delano, 187 Mo. App. 119; Penn v. Brashear, 65 Mo. App. 24; Matthews v. City of Kansas, 80 Mo. 23; Miller v. Ry. Co., 162 Mo. 424; Meek v. Hurst, 223 Mo. 696; Payne v. O'Shea, 84 Mo. 129. (4) The contention of the Surety Company that it was discharged as surety by reason of the doing of extra work and the making of alerations without previous written orders signed by the architect, is wthout merit. (a) The Surety Company expressly agreed by its bond that it should not be released, and that its liability should not be affected or impaired, by the doing of extra work or

the making of alterations without notice to it and without written orders therefor of the architect. Lackland v. Surety Co., 256 Mo. 133; Bagwell v. Surety Co., 102 Mo. App. 707; Ashenbroedel Club v. Finley, 53 Mo. App. 256; Bldg. & Loan Assn. v. Fitzmorris, 7 Mo. App. 283; Howard County v. Baker, 119 Mo. 397; Barton v. Morris, 192 Mo. App. 561. (b) Even in the case of building contracts which positively prohibit extra work or alterations except on written orders of and computations of cost by the architect, where immediately on completion of the work the contractor and the architect make a list of changes and a computation of the cost thereof in writing, and the architect approves of the changes made, the surety is not released, even though no written orders were given before the work was done. Lackland v. Surety Co., 256 Mo. 133. (c) The failure of the surety company to plead this defense is fatal to its present contention. The defense by a surety that the obligee has breached some provision of the contract, is an affirmative defense which must be specially pleaded; otherwise, it is deemed to be waived. 32 Cyc. 131; Howard County v. Baker, 119 Mo. 397. (5) By the terms of the bond and contract, defendants covenanted to indemnify plaintiff for attorneys' fees incurred as result of default by the contractor, and the referee properly allowed the plaintiff the attorneys' fees it had paid out. (6) The counterclaim was properly held to be without merit by the referee and the trial court.

DAVID E. BLAIR, J.—The action is for damages upon a building contractor's bond. Judgment below was for plaintiff (respondent here) for the penalty of the bond and execution thereon for the damages awarded. Defendants have appealed.

We will briefly outline the issues raised by the pleadings. The petition alleges the corporate capacity of plaintiff and of defendant Southwestern Surety Insurance Company; that on April 13, 1913, plaintiff and defendant Morris entered into a contract for the construction of a certain building, and for the alteration and remodeling of another building in Kansas City, in accord-

ance with certain plans and specifications made by designated architects, at and for the price of $32,200, with additional compensation for extra work; that defendant Morris agreed to save and hold the plaintiff harmless of and from all loss, damages or expense, including attorneys' fees, arising from claims of laborers or materialmen in connection with the construction and alteration of said buildings, and to furnish bond for the faithful performance of said contract; that defendant Morris, as principal, and defendant Southwestern Surety Insurance Company, as surety, on April 30, 1913, executed and delivered to the plaintiff a bond in the sum of $32,200, the condition thereof being that, if said defendant Morris should indemnify the plaintiff against any loss or damage directly arising by reason of his failure to perform said contract faithfully, said bond would be void, otherwise to remain in full force and effect; that plaintiff fully performed said contract on its part, and that defendant Morris failed to faithfully perform said contract in certain specific particulars, to-wit:  he did not save plaintiff harmless from loss, damages and expense from claims of laborers and materialmen, to plaintiff's damage in the sum of $8,813.34, and the additional sum of $2500 attorneys' fees, and did not complete the work on or before August 15, 1913, as specified in said contract, and not until September 15, 1913, all to plaintiff's damage in the sum of $3,100, as provided by said contract, and failed to keep a separate account of extra labor and material as provided in said contract, to plaintiff's damage in the sum of $1,000. Plaintiff prayed judgment for penalty of the bond and for execution for damages in the sum of $15,413.34 and interest.

Defendant Morris admitted the execution of the contract, and alleged an additional provision therein that he was to be paid the sum of $100 for each day said buildings were completed before August 15, 1913, and that he was to receive a profit of ten per cent on the cost of all labor and material going into the extra work; that by mistake items of $2,892 for ornamental iron and $5,270 for lumber were omitted in making up the figures of his bid,

and before entering upon said work and while said defendant was still able to place the plaintiff *in statu quo* defendant discovered such omission and called the same to the attention of the plaintiff, and plaintiff agreed with said defendant that if he would proceed with the work under said contract plaintiff would make to defendant a reasonable allowance for the cost of installing said lumber and ornamental iron, and thereupon said defendant waived his right to rescind the contract; that thereafter said defendant proceeded with the performance of said contract and did extra work of the reasonable value of $14,020.45, as per an itemized statement attached to his answer, and that plaintiff waived the keeping and furnishing to plaintiff of the separate account of such extra work; that had it not been for changes in plans and specifications made by the plaintiff after the execution of the contract and delays of other contractors and the doing of the extra work, the said defendant would have completed said contract seventy-four and one-half days prior to August 15, 1913, and thereby the said defendant lost a bonus of $100 a day and sustained damages on that account in the sum of $7,450; that during the performance of said contract plaintiff and said defendant agreed that plaintiff should take over defendant's work called for in said contract and pay all obligations incurred by defendant Morris in the performance of said contract and would hold said defendant harmless because of loss due to the execution or performance of said contract and because of bills for labor and material contracted by said defendant, in consideration of said defendant waiving all claims which he had against the plaintiff on account of said ornamental iron and lumber and on account of his claim for bonus and on account of his claims for extras, and that thereafter the plaintiff took over the completion of said contract, and that by reason thereof there was an accord and satisfaction of all claims made by the plaintiff as set forth in its petition.

Said defendant Morris renewed his allegations above set out in his plea of accord and satisfaction and plain-

tiff's refusal to select arbitrators, and because thereof prayed judgment for $29,632.45 as a counterclaim.

Defendant Southwestern Surety Insurance Company pleaded in defense of its liability as surety the same matters alleged by defendant Morris constituting his plea of accord and satisfaction, and further pleaded that plaintiff failed to comply with the provisions of said defendant's bond in respect to giving notice to it of the default of said defendant Morris in not complying with the terms of his contract, and that plaintiff wholly failed to notify said surety company wherein the conditions of said contract had been breached.

Replying to the above, plaintiff set out the terms of the contract in relation to extra work and the selection of arbitrators and that the architects approved defendant Morris's account for extra work in the sum of $11,213.40, and that defendant Morris assented to such allowance and did not ask for the selection of arbitrators until long thereafter and not until long after he had failed his counterclaim. Plaintiff further alleged that the contract provided that all questions of right of way among contractors in case of dispute should be left to the architects, and due· allowance was made for the time consumed by other contractors in the performance of their work by the terms of said contract, and that no extension of time should be allowed to defendant Morris on account of the work of other contractors, unless, in the opinion of said architects, such other contractors should cause said defendant unreasonable delay. In that event, the time for completion should be extended upon the certificate of the architects; that no such certificate of extension was issued by the architects, and if any such delay occurred, it was in accordance with the terms of the contract, and plaintiff owed defendant Morris nothing on that account.

The reply to the second amended answer of defendant Morris contained a general denial, and set up the matters alleged in its reply to the second amended answer of the defendant surety company in relation to extra work and in relation to the agreement upon the sum of $11,213.40 therefor and failure to ask for arbitrators un-

til long thereafter. Said reply also set up the same matters in defense to the claim for bonus and pleaded the same matters in defense to the counterclaim of said defendant.

Upon motion of the plaintiff, Hon. Daniel C. Ketchum was by the court appointed referee. Such appointment was made on the theory that the trial of the issues of fact involved and required the examination of a long account. Thereafter defendants filed a motion to set aside the order of reference, on the ground that the second amended reply of the plaintiff to the answer of defendants wholly changed the issues from those existing and made by the pleadings on the date this cause was referred, thereby depriving the case of the characteristics necessary to the reference, and left the issues in the case solely those which are to be determined by a jury under the Constitution of this State. This motion was overruled by the court.

Thereafter said referee proceeded to hear the evidence and in due time filed his report. He found the due execution of the bond sued on and the contract with its specifications; that defendant Morris neglected to include items of $5,270 and $2,892 for lumber and ornamental iron; that neither plaintiff nor its agents interfered with or influenced said Morris in making up his bid and did not know at the time the contract was let that he had neglected to incorporate said items in his estimate; that the claim of said Morris that, after discovering his error, he went to plaintiff's representative and threatened to quit the work and was told by him to go ahead and he would take care of him, is not sustained by the evidence.

In response to the claim of accord and satisfaction the referee found against defendant, and in his report details a number of facts found by him bearing upon said issue. On the question of bonus to the defendant Morris for the completion of said contract prior to the contract date, said referee found against defendant. On the question of liquidated damages to the plaintiff because of delay of defendant Morris in completing the contract, the referee found in favor of the plaintiff in

the sum of $3,000, being thirty days' delay at the sum of $100 a day. On plaintiff's claim for damages in the sum of $1,000 for failure of the defendant Morris to keep a record of extra work and material, said referee found in favor of defendants. On the issue of extras and alterations, the referee found that plaintiff was indebted to defendant Morris in the sum of $11,506.33. On the issue of allowance for attorneys' fees, the referee found for the plaintiff in the sum of $2500. The referee found that the plaintiff had paid to defendant Morris under the said contract the sum of $28,711.41, and that plaintiff had paid out upon lien claims incurred in performance of the contract the further sum of $18,479.45 under authority executed by the defendant. The referee also found that plaintiff had paid out in the satisfaction of judgments against it on account of work and material on said building, the sum of $4,949.79.

On the question of arbitration, the referee made no express finding, but found as a fact that the attorney for defendant Morris on September 6, 1917, made personal demand of counsel for plaintiff that he accede to counsel's request for arbitration, and that counsel for plaintiff refused such arbitration. Said referee therefore recommended to the court that plaintiff have judgment against defendants in the sum of $13,967.12, plus six per cent interest on $8,467.12 thereof from August 3, 1915, to the date of the judgment, and that judgment be rendered against defendant Morris on his counterclaim.

The referee was appoint July 10, 1917, and began taking the testimony on July 24, 1917, and completed the taking of such testimony November 30, 1917, and filed his report on November 18, 1918. On September 8, 1917, at the May term, 1917, defendants filed their motion to set aside the order of reference, which was thereafter overruled at said May term. On November 22, 1918, defendants filed a motion to have the cause placed on the jury docket for trial before a jury on a portion of the issues involved in the pleadings, not including the counterclaim of defendant Morris, and on the same date both defendants filed their exceptions to the referee's report,

On November 14, 1918, defendants filed their motion to set aside the reference and the findings of the referee. The latter date possibly is incorrectly stated, as the referee's report was not filed until November 18, 1918. At the March term, 1919, to-wit on April 15, 1919, the court made its findings and entered judgment in said cause, and thereafter on April 28, 1919, at the same term and on its own motion, set said judgment aside and thereupon entered its order overruling the several motions of the defendant to set aside the reference and to place the case on the jury docket for trial by a jury upon certain issues made by the pleadings, approved the report and findings of the referee, *except* the item of $3,000 awarded to plaintiff as liquidated damages for the delay of defendant Morris in completing the work called for by the contract and disallowed such item, and *except* that the court allowed plaintiff interest on attorneys' fees in the sum of $2500 from August 3, 1915, at the rate of six per cent per annum, and *except* allowance of interest by the referee at six per cent from August 3, 1915, upon the total sum of $8,467.12 and in lieu thereof awarded interest upon the several items making up said sum of $8,467.12 from the several dates of such respective items, and fixed the total amount of such interest at the sum of $2,256.18. In all other respects the report of the referee was approved and confirmed.

The court found the issues upon the counterclaim of defendant Morris in favor of the plaintiff, and found the issues upon plaintiff's petition in favor of the plaintiff and against both defendants and overruled the exceptions of both the plaintiff and said defendants to the referee's report. The court thereupon rendered judgment for the plaintiff against both defendants in the sum of $32,200, the penalty of the bond, and directed that plaintiff have execution for damages awarded by the court in the sum of $13,777.05 and all costs of suit, and fixed the allowances to the referee and the stenographer and ordered same taxed as costs. To this finding and judgment defendants saved their exceptions.

The bill of exceptions filed under leave given after the rendition of judgment and after the allowance of the appeal to this court, recites the filing of the separate motions for a new trial by the defendants and the overruling thereof, with defendants' exceptions to such action.

I.   The first question for our consideration is the alleged error of the trial court in ordering a reference of the case without the consent and over the objection of defendants and in thereafter refusing to set aside such order of reference upon the motion of said defendants.

**Reference: Term Bill of Exceptions.**

Plaintiff contends that the question of the alleged error of the court in ordering a reference and in overruling defendants' motion to set aside such reference is not before us for review, because defendants failed to preserve their exceptions to the action of the court in that respect by term bills of exception filed at or under leave granted during the term at which such orders were made, and that such exceptions are not sufficiently saved by bill of exceptions filed under leave given at a subsequent term.

We have carefully examined appellants' abstract of the record and respondent's additional abstract thereof and find that no term bills of exceptions were filed at either of the terms when the orders of the court in relation thereto were entered.  The bill of exceptions, filed under leave of court given at the subsequent term at which judgment was entered and after the appeal was granted, does recite these rulings and that the defendants saved their exceptions to such rulings.

Exceptions to such orders must be saved in term bills of exceptions filed under leave given during the term at which such orders were made and are not saved by recitals in the bill of exceptions filed under leave given at a subsequent term.   [State ex rel. v. People's Ice Co., 246 Mo. 168, l. c. 198;  Smith v. Baer, 166 Mo. 392, l. c. 401; Dean v. Railroad, 229 Mo. 425, l. c. 439-440;  State ex rel. v. Johnson, 132 Mo. 105, l. c. 110;  Asphalt Paving Co. v. Ullman, 137 Mo. 543, l. c. 564;  Vette v. Geist, 155 Mo. 27, l. c. 36.]

It is too late after the referee's report has been filed to move for trial by jury or to insist upon arbitration provided for in the contract. [State ex rel. v. People's Ice Co., supra; Smith v. Baer, supra, l. c. 403; Young v. Powell, 87 Mo. 128, l. c. 130.]

Laws of 1911, page 139, did not abolish the necessity for term bills of exceptions to preserve for review exceptions taken to the action of the court in respect to rulings not made during the progress of the trial. [State ex rel. v. John Gill & Sons Co., 220 S. W. l. c. 979 and 980.] Section 2028, Revised Statutes 1909 (now Sec. 1459, R. S. 1919), applies to exceptions taken during the progress of the trial, and Section 2029, Revised Statutes 1909 (as amended by Laws 1911, page 139; now Sec. 1460, R. S. 1919), refers to Section 2028 (Section 1459, R. S. 1919) by the use of the words "such exceptions." The closing sentence of Laws of 1911, page 139, enacting a new section in lieu of Section 2029, Revised Statutes 1909, seems to recognize the necessity in some cases of more than one bill of exceptions. Said sentence is as follows: "All exceptions taken during the trial of a cause or issue before the same jury shall be embraced in the same bill of exceptions."

A distinction between exceptions taken to rulings *prior* to the trial or hearing and those taken *during* the trial or hearing appears to be made in 3 Corpus Juris at pages 907 and 908. The necessity for timely exceptions to rulings on matters preliminary to the actual trial and preservation of same is fully recognized in this State. [Wolff v. Ward, 104 Mo. 127; Tuttle v. Blow, 163 Mo. 625; Dean v. Railroad, supra, l. c. 439.]

Appellants' abstract of the record entries made at the time shows that defendants excepted to the order sending the case to a referee, and to the order overruling said defendants' motion to set aside such reference. Such entries are no part of the record before us for review, unless made so by proper and timely bill of exceptions. They are not part of the record proper. [Wolff v. Ward, *supra,* l. c. 145; Stearns v. Railway Co., 94 Mo. l. c. 321; State ex rel. v. McKee, 150 Mo. l. c. 241; Nichols v.

Stevens, 123 Mo. l. c. 119; Drainage District v. Richardson, 227 Mo. l. c. 259; State v. Bell, 166 Mo. l. c. 109; Phillips v. Jones, 176 Mo. 328; Piano Company v. Gordon, 207 S. W. (Mo. App) 233; State v. Baugh, 217 S. W. l. c. 280.]

We have therefore concluded that, as the defendants did not properly preserve their exceptions to the action of the trial court in referring the case and to its subsequent action in overruling the motion of said defendants to set aside such reference by term bills of exceptions filed during the term at which such rulings were made or by term bills of exceptions filed in pursuance of leave granted at such terms, the propriety of the court's action in those regards is not properly before us for review.

Independent of the foregoing state of the record we are strongly impressed from an examination of the pleadings and the evidence that the action of the trial court in referring the case to the referee and subsequently in refusing to set aside his order was entirely proper and that defendants have no just cause of complaint.

II.   Appellants contend that it is our duty under the provisions of the Laws of 1919, page 213, to review the evidence before the referee and the findings of fact made by him and to render our own independent judgment upon such evidence.   This is an action at law.   Under the holdings of this court prior to said enactment, findings of fact made up by a referee in such cases when approved and confirmed by the trial court occupy the same status on appeal as the verdict of a jury and such findings will not be disturbed if supported by substantial evidence.   [State ex rel. v. People's Ice Co., 246 Mo. l. c. 202; State ex rel. Saline County v. Wilson, 288 Mo. 315, 232 S. W. l. c. 143; Roloson v. Riggs, 274 Mo. 522, l. c. 528; Johnston v. Star Bucket Pump Co., 274 Mo. 414, l. c. 424.]   In 1919 the General Assembly attempted to change the foregoing rule by the enactment above mentioned, which reads as follows:

.   ''On appeals in all cases, whether law or equity, in which a referee has been appointed and made a report,

the appellate court shall, on exceptions properly pre-
served, review the evidence and the findings of fact and
conclusions of law of the referee and the trial court, and
give such judgment as shall be conformable to the law
on the evidence.''

The- above quoted enactment became Section 1444,
Revised Statutes 1919, and was amended in 1921 by ad-
ding the words ''and writs of error'' after the word
''appeals'' in the -first line. [Laws 1921, p. 195.]    The
1919 amendment became effective by the terms of its
emergency clause on May 29, 1919. But under the rule
laid down in State ex rel. Westhues v. Sullivan, 283 Mo.
547, 224 S. W. 327, and Fahey v. Hackmann, 291 Mo.
351, said act did not become effective until August 7, 1919.
The transcript of the judgment and order granting an
appeal were lodged here July 9, 1919, and the appeal was
allowed on June 11, 1919. Under authority of Christine
v. Luyties, 280 Mo. 416, 217 S. W. 55, and Construction
Co. v. St. Louis, 284 Mo. 895, 223 S. W. 931, the pro-
visions of the 1919 amendment would not apply to the
appeal in this case pending here when such amendment
became effective.

However, the amendment of 1919 has been declared
to be unconstitutional by Division One of this court in
the case of State ex rel. v. Wilson, 288 Mo. 315, 232 S.
W. 140, and that case appears to have been soundly ruled.
We will therefore consider the findings of fact made by
the referee under the rule laid down in Johnston v. Pump
Company, supra, independent of when the appeal was
taken or the transcript filed here and unaffected by the
act of the General Assembly above set out. The amend-
ment of Section 1444, Revised Statutes 1919, does not
affect the validity of the law as determined in State ex
rel. v. Wilson, supra.

III.    In addition to the foregoing, defendants as-
sign error in the findings of fact made by the
Conflicting    referee and his conclusions of law and the trial
Evidence:    court's approval and confirmation thereof.
Findings
Conclusive.          It is insisted that the evidence established

an accord and satisfaction between the plaintiff and defendant Morris, and that the referee's finding and the judgment of the trial court should have been in favor of defendants on that issue. Even if defendants had been entitled to a separate trial on said issue before a jury, the request made therefore was made after the report of the referee was filed, and came too late. [State ex rel. v. Ice Co., supra; Smith v. Baer, supra; Young v. Powell, supra.] Defendants admit in their brief that the evidence on the issue of accord and satisfaction was conflicting, but insist that it largely preponderated in favor of the defendants. Defendants' evidence tended to prove such an agreement. This was met by the positive denial of Mr. Kline. There was therefore substantial testimony supporting the finding of the referee on that issue, and we cannot disturb the finding. The referee was not bound by the number of witnesses testifying on the point. He had the right and it was his duty to consider the inherent probability of the truth of the testimony offered by defendants.

The same thing may be said in relation to the finding of the referee concerning the alleged agreement between Clark for the plaintiff and defendant Morris as to the mistake in omitting from the bid the costs of lumber and ornamental iron. Defendants offered testimony tending to prove that such omission was called to the attention of plaintiff's manager, Clark, before anything was done under the contract, and that said Clark agreed to make allowance for the same. This was positively denied by Clark. We are bound by the referee's finding against the defendants upon this issue.

IV. Defendant surety company contends that its liability was released by a breach of the building contract, by reason of unauthorized changes in said contract due to alterations and extra work not required of the contractor by written order of the architects or owner, as provided in the contract. The referee found **Building Contract: Bond: Alterations.** this issue against defendant surety company. It is conceded that alterations were made and extra work done without written orders made

at the time. The bond indemnified plaintiff against damages accruing to it by reason of the failure of Morris to faithfully perform the contract, and specifically referred to the plans and specifications covered by said contract and made the same part of such suretyship agreement. The building contract provided for the doing of such extra work as should be order 1 by the architects or owner and that the doing of such extra work without notice to the surety company should not operate to release the surety. The specifications provided for alterations in, additions to or omissions from the work therein included, without in any way affecting or avoiding the contract or the bond, and contained the following clause:

"It is expressly agreed by all parties hereto that such alterations shall be understood to have no effect upon the security or validity of the contractor's contract or bond, and any agreement to the above effect by virtue of this clause shall inherently be considered to contain the waiving of any qualifying condition of bond."

Having embodied in its bond the building contract and specifications containing such provisions, defendant surety company will not now be heard to say that alterations and extra work were done without its knowledge or consent or to take advantage of the omission of written orders for such work at the time it was done. [Lackland v. Renshaw & Surety Co., 256 Mo. 1. c. 140, 141, and cases cited.] Besides, release from the obligations of the bond for that reason was not pleaded as a defense by said defendant. [Howard County v. Baker, 119 Mo. 1. c. 407.]

All the extra work done by the contractor which was allowed by the referee was covered by written order of the architects made subsequent to the doing of the work. Claims for other extra work made by defendant Morris and not covered by such orders were disallowed by the referee. Such subsequent written orders were sufficient under the Lackland Case, supra. With one exception, the sureties in the cases cited by the appellants were personal sureties and not commercial sureties as here.

The Lackland Case, supra, holds that the reason for applying the strict rules of suretyship fails in the case of sureties for hire. Nor does it appear in any of the cases cited by appellants that the terms of the contract and specifications incorporated in the bond and made a part thereof were as liberal as they are here in reference to alterations and extra work or in respect to the rights of the surety affected thereby. The referee properly held that defendant surety company was not released by the omission of written orders for extra work at or prior to the doing of the same.

V. The referee found that plaintiff was entitled to recover fees in the sum of $2500, which the evidence shows it paid to its attorneys Rosenberger and Reed. The court added interest on the item of attorneys' fees from the date suit was filed to the date of the judgment. We do not understand that any complaint is made concerning the allowance of such interest, if the allowance of attorneys' fees itself is justified. The defendants contend that plaintiff only asked for an allowance of attorneys' fees, in connection with the adjustment of claims against the plaintiff on account of the construction of said building over and above the contract price and extra work, upon the sum of $8,813.34, and that the allowance of $2500 is unreasonable, and that, as the evidence does not show that such services and charges were rendered with reference to said sum of $8,813.34, there was a total failure of proof in that regard and no allowance whatever should have been made.

The petition is not susceptible of the construction contended for by defendants. Fairly construed said petition pleaded the necessity for services by plaintiff's attorneys covering all claims. The contract price was $32,200 and the referee allowed extras in the sum of $11,506.33, or a total of contract and extras amounting to $43,706.33. The total amount plaintiff was required to pay, exclusive of attorneys' fees, exceeded $50,000. From the date when the default of the contractor was brought to the attention of the plaintiff, every step taken was

necessarily under the advice of counsel. Defendant surety company was promptly notified of such default and elected to remain silent, thereby indicating to plaintiff the necessity of the utmost caution and that it proceeded with the completion of the work and the adjustment of lien and other claims at its peril. Plaintiff was compelled to adjust and pay twenty-five lien claims not reduced to judgments, which aggregated $18,479.45, and to pay lien claims reduced to judgments amounting to $4,949.79. Plaintiff could not hope to recover upon the contractor's bond for such items unless prepared to justify such payments, and this required of counsel careful examination into the merits of every item. The bond fixed the liability of defendants for attorneys' fees. The amount paid on that account by the plaintiff and allowed by the referee is clearly not excessive under the evidence.

VI. The counterclaim of defendant Morris was disallowed by the referee, and we think properly so. Such counterclaim rested largely for support upon the same evidence which was introduced to defeat plaintiff's recovery on its petition. We have approved the findings of the referee on those issues. The referee.disallowed defendants' claim for a bonus. This claim was based largely on speculation, and the referee found that the extra work and alterations did not increase the time necessary to do the work and did not add to the expense of the contractor which was not covered by additional compensation. The contract provided for a certificate from the architects in case an extension of time was necessary, and no such certificate was issued. We, therefore, approve the findings of the referee in disallowing the counterclaim.

Counterclaim.

VII. The referee carefully and intelligently performed his duties, and his conclusions of law and findings of fact were substantially approved by the court, except as to the allowance to plaintiff of liquidated damages for delay. Of this defendants cannot complain. The judgment below deserves and has our approval and is accordingly affirmed.